6619

### TODD v. WESTERN UNION TEL. CO.

1. REFUSAL TO CONTINUE case on ground of surprise after granting motion to amend complaint during trial is not reversible error unless abuse of discretion is shown.

2. TELEGRAPH COMPANIES—PUNITIVE DAMAGES.—Where there is undisputed evidence of effort to deliver a telegram, although the delay was long and that it was not finally delivered because the addressee was located too late to subserve the purpose of the message, the company is not liable for punitive damages.

3. IBID.—MENTAL ANGUISH.—The trial Court having ruled out all evidence as to plaintiff's wife and children, there was no element of mental anguish left, as the telegram was then a mere business message.

*Toale* v. *Tel. Co.*, 76 S. C., 248, *distinguished from this case.*

Before MEMMINGER, J., Spartanburg, April Term, 1906. Reversed.

Action by H. L. Todd against Western Union Tel. Co. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons* and *Evans & Finley,* for appellant, cite: *Facts in this case do not warrant verdict for mental anguish:* 71 S. C., 29; 70 S. C., 418; 75 S. C., 208; 69 S. C., 21. *Nor punitive damages:* 72 S. C., 356.

*Messrs. Johnson* and *Nash,* contra, cite: *No evidence of wrong admitted to defendant's prejudice:* 76 S. C., 258. *No error in permitting complaint amended during trial:* Code of Proc., 194; 51 S. C., 417; 12 S. C., 172. *Question of mental suffering was properly submitted to the jury:* 76 S. C., 257; 75 S. C., 363; 54 S. C., 511. *Delay in delivery of telegram is ground for punitive damages:* 73 S. C., 380; 65 S. C., 93; 76 S. C., 257. *This was a personal telegram and punitive damages are recoverable:* 69 S. C.. 531: 72 S. C., 34. *Whether plaintiff should have used other means to prevent injury is for jury:* 73 S. C., 385. 8. Ency., 605; 76 S. C., 248.

August 7, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY. This action is based upon the failure to deliver a telegram.

The allegations of the complaint material to the questions involved, are as follows: "That on the 29th day of June, 1904, the plaintiff was at Clinton; S. C., with his family, consisting of his wife and several small children. At half past eight o'clock in the morning of said day, he delivered to the defendant, at its office in Clinton, a message directed to R. M. League, at White Stone, directing said R. M. League to meet him that afternoon at Glendale Mills with a carriage.

"That plaintiff then and there informed defendant, of the importance of said message, and requested that it be sent immediately, so that he and his family would not be left at Glendale Mills, several miles from home, without means of conveyance. The defendant received said message, and promised to promptly transmit and deliver same as directed.

"That although said R. M. League, who is a servant and employee of the plaintiff, was at his well-known place of business, during the whole of said day, when said message could, and ought to have been delivered to him, and although said place of business, was within two hundred yards of the office of defendant at White Stone, and within the regular delivery limits of said office, said defendant wilfully, wantonly, with gross negligence, and in utter disregard of the rights of plaintiff, failed to transmit and deliver said message, and said message has never been delivered to R. M. League, or to any one for him until this day, and no attempt even to do so has ever been made.

"That if defendant had promptly and properly delivered said message, as it was its duty to do, R. M. League could and would have met plaintiff at Glendale Mills, with a closed and comfortable carriage, and conveyed him and his family home to White Stone, without exposure to the inclement weather, and plaintiff would have been spared great mental stress and anguish, to which he was subjected by the wanton, wilful and negligent acts of the defendant."

The defendant denied the allegations of negligence and wilfulness, and set up as a defense "that if plaintiff suffered any damage, as alleged in the complaint, it was by reason of the negligence of plaintiff, and his failure to take advantage of the means at his command for preventing such damage."

During the progress of the trial, the plaintiff's attorneys made a motion to amend the last of said paragraphs of the complaint, so as to make it read: "If they had delivered the telegram to R. M. League, he would have sent a closed carriage to Glendale, as directed by Mr. Todd."

The motion was granted, whereupon the defendant's attorney made a motion for a continuance, on the ground of surprise, which was refused.

The jury rendered a verdict in favor of the plaintiff, and the defendant appealed.

Error is assigned in permitting the amendment, and in refusing, thereafter, to continue the case, but the exceptions raising these questions aré overruled, for the reason that it has not been made to appear, that there was an abuse of discretion.

The next question for consideration, is whether there was any testimony tending to show, that the plaintiff was entitled to punitive damages.

The message was transmitted from Clinton, by way of Spartanburg, where it was received some time during the morning of the 29th of June, and shortly thereafter, sent by telephone to White Stone Springs, about three miles from White Stone railroad station, which is about three miles, also, from Glendale Mills. White Stone station was formerly known as Rich Hill, and the telegraph office at White Stone had been established only a short time. There was no telegraph office at White Stone Springs.

The plaintiff testified that he arrived at Glendale Mills about four o'clock in the afternoon.

C. L. Mingus, a witness for the defendant, thus explains why the telegram was not delivered: "Q. Where did you live the 29th day of June, 1904? A. Spartanburg. Q. What was your occupation? A. I was manager of the Western Union Company. Q. State whether or not you received the telegram from H. L. Todd to R. M. League? A. Yes, sir. Q. Have you got the telegram? A. Yes, sir. Q. State whether you received it at Spartanburg? A. Yes, sir; received it at Spartanburg. Q. State what was done with it? A. The message was received in the regular course of business, and telephoned to White Stone. Q. What time was it received? A. 10:24 in the morning. Q. And sent

when? A. It was 'phoned two minutes later to White Stone Hotel. It was known in the telegraph rule book as White Stone. Q. You had a telephone connection with White Stone Hotel, and when you got a message you 'phoned it? A. Yes, sir. Q. All messages were 'phoned there? A. I had been 'phoning them always because, all the messages we had handled at the time, addressed to White Stone, went to White Stone Hotel. So far as I remember this is the first that I have ever found, that was not really intended for White Stone Hotel addressed that way. Q. It was 'phoned down there and left with whom? A. Hotel clerk, Mr. Fox. Q. Did he receive it? A. Yes, sir; 10:20 A. M. He is the man who took the messages almost all the time. Q. What date was that message received? A. June 29th, 1904. Q. Was it received at 10 o'clock on the 29th? A. 10:20, and two minutes later 'phoned to White Stone Hotel, and received by Mr. Fox, the hotel clerk. Q. Was that message returned to you? A. Some hours after that—I don't know the time of the day either—I made no record of it—but some hours after that time, as well as I remember, probably 3:30 to 4 o'clock, somewhere along there, the hotel called up and said they were unable to deliver the message— couldn't find any one about the hotel with that name. I asked them if they had sent it to the water house where they were shipping water, and there they found that they didn't know anything about this man League. And it was, I think, in the neighborhood of an hour—I won't say as to the time—they called again and said they didn't know him there, but there was a man by the name of League at White Stone Station, and I looked at the message and I saw that Mr. Todd had gone there, and I saw it was entirely too late to accomplish the purpose, and to have forwarded it to White Stone Station under our rules and custom, would have incurred an expense of 25 cents additional, and if it hadn't been paid there, it would have fallen on me to pay it; but it was entirely too late to carry out the purpose of the

telegram, according to my information given in the telephone message."

While there was long delay there was undisputed evidence of an effort to deliver the message, and the reason it was not finally delivered, was because it would then have been useless.

These facts bring the case within the principle announced in *Roberts* v. *Tel. Co.,* 73 S. C., 520, 53 S. E., 985, and *Key* v. *Tel. Co.,* 76 S. C., 301, that mere delay in delivering a telegram is not sufficient to send the case to the jury, on the question of punitive damages, when there is undisputed evidence of an effort to deliver.

This assignment of error is sustained.

The last question for consideration is whether there was any testimony tending to show, that the plaintiff suffered mental anguish.

The plaintiff testified as follows: "Q. Did you suffer any mental anguish or distress? A. I did. Q. State the facts why you were worried? A. I was greatly worried and put out from the fact, that it was threatening and I had my wife with me— Mr. Evans: Now, your Honor, he is simply trying to get in this irrelevant testimony before this jury, which he has no right to do after the Court has held that he cannot testify to that. Court: Don't say anything about your suffering with reference to your wife. Witness: I was greatly worried from the fact that I could not get any conveyance, and it was coming on night, and all the teams were out from Glendale and we had no way to get home."

His Honor, the presiding Judge, ruled that the plaintiff could not introduce testimony for the purpose of showing mental anguish, on account of not being able to get the carriage for his wife and children, as they were not mentioned in the telegram.

The case of *Capers* v. *Tel. Co.,* 71 S. C., 29, 50 S. E., 537, decides that the mental anguish statute has reference to social and personal matters, as distinguished from business

transactions; and when the presiding Judge ruled out the testimony as to the wife and children, there was no element of mental anguish, and it became purely a business transaction.

The case is different from that of *Toale* v. *Tel. Co.,* 76 S. C., 248, in which the jury was allowed to consider the fact that the plaintiff informed the defendant's agent, when he delivered the message for transmission, that he was anxious to reach home, so as to be with his family.

This assignment of error is also sustained.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.