[Western Union Tel. Co. v. Rowell.]

# Western Union Tel. Co. *v.* Rowell.

*Action for Damages for Failure to Deliver Telegram.*

(Decided Nov. 14, 1907.   45 So. Rep. 73.)

1. *Telegraph and Telephone; Operation; Contract.*—Where the complaint alleges that plaintiff arranged with one C. to send him a telegram in case of his wife's illness, and, on the happening of that event, C. did so, and informed the defendant's agents of the arrangement, the necessary contractual relation is shown to exist between the plaintiff and the defendant in reference to the sending of the message so as to render the defendant liable for negligence in the transmission or delivery thereof.

2. *Same; Actions; Damages.*—Where the action is in tort for failure to deliver or for delay in delivery of a social telegram, and there is no proof of injury to the person or estate, damages for mental pain and anguish are not recoverable; but where the action is ex contractu for breach of the contract to deliver, a recovery may be had for mental pain and anguish, although only nominal damages are sustained.

3. *Contracts; Action for Breach; Motive.*—Except in some special cases, such as action for breach of contract of marriage, or for breach of statutory bond, the motive or intent of the defendant cannot be considered.

4. *Telegraphs and Telephones; Operation; Action; Character: Pleading.*—A complaint alleging that plaintiff arranged with C. to notify him by telegram if his wife was sick; that complying therewith C. delivered a message to defendant's agents addressed to plaintiff, at the same time informing defendant's agents of the arrangements with plaintiff, and that defendant failed willfully and wantonly to deliver the telegram as he agreed to do, etc., is in ex contractu and not ex delicto.

5. *Same; Defenses.*—Where a telegram was addressed to plaintiff in care of a certain railroad shop where plaintiff was employed, it was the telegraph company's duty to deliver the message at the shop, a delivery to some agent of the railroad company at the shop would have been a compliance with its contract, so that it cannot escape liability for failure to deliver the message on the plea that plaintiff was not at the shops or in the city, or that plaintiff's agent who sent the message was notified by defendant that plaintiff was not in the city but at another place, and failed to send the message to the place where the plaintiff was.

6. *Evidence; Judicial Notice; Scientific Facts and Principles.*—The nature, operation and ordinary usage of the telephone are facts of general scientific knowledge of which the courts take judicial notice as a part of public contemporaneous history.

7. *Same; Action for Damages; Admissibility.*—Conversations had over a telephone in relation to business are admissible in evidence

although the voice of the person, or the person, at the telephone is not identified; such conversation stands on the same footing as personal interviews in relation to the business had by a customer with an unknown clerk in an ordinary shop.

8. *Trial; Questions for Jury.*—Although evidence of a conversation held over the telephone is admissible its construction and effect is a question for the jury to decide.

9. *Telegraphs and Telephones; Failure to Deliver; Evidence; Jury Question.*—Where the evidence showed that plaintiff, to whom the message was sent, called the defendant over the telephone to inquire about the delivery of the message, the qustion whether or not such conversation was had and whether or not the person with whom the conversation was had had authority to speak for the company, was for the determination of the jury.

10. *Same; Evidence; Admissibility.*—Where the evidence showed that plaintiff to whom the message was sent had a conversation over the telephone with some employe of the defendant company, the tendency of which was to show that the defendant had not exercised due diligence to deliver the message, such conversation was properly admitted in evidence.

11. *Evidence; Declaration; Physical Condition; Opinion Evidence; Expert Evidence.*—In an action for failure to deliver telegram whereby sendee was delayed several days in reaching his wife's bedside, it was competent for the sendee to show that his wife was sick and nervous when he reached her and had been so previous to that time; the declarations of the wife made to the sendee that she had been mighty sick and nervous, and by the attending physician to show her condition, were also admissible.

12. *Trial; Instructions.*—Written charges bad in form may always be properly refused.

13. *Same; Proximate Cause.*—Where the agent of plaintiff sent a telegram to the plaintiff stating "Come on first train your wife is sick" and at the time of the sending informed defendant's agent that plaintiff's wife was sick, the defendant is presumed to know that plaintiff would endure great mental suffering as a natural consequence of the failure to deliver telegram, and it may be said that such suffering was the proximate result of the failure to deliver.

14. *Same; Instructions.*—An instruction asserting that when plaintiff learned that he had been kept away from the bedside of his wife while she was sick, by reason of the negligence of the defendant, when it was his desire and wish to be with her and do what he could, for her relief, after he realized that, then in a retrospective way he may have suffered mental anguish because kept away from her bedside, is not erroneous as tending to convey the idea that there could be no recovery for the wife's suffering or as embracing the idea of mental suffering before plaintiff reached his wife.

15. *Same.*—A charge was properly refused as misleading which asserts that plaintiff could not recover for any anxiety or mental distress he may have sustained by reason of his wife's suffering, since; while no recovery should be had for mental suffering superinduced alone by the wife's suffering, the suffering of the wife is a factor to be considered by the jury in connection with the conduct of

the telegraph company in arriving at their conclusion as to whether the plaintiff endured mental suffering as a proximate result of a breach of the company's contract to deliver.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Action by W. H. Rowell against the Western Union Telegraph Company to recover for breach of contract to deliver a telegram. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

As the character of the complaint is discussed in the opinion, we set it out: "Count 1. Plaintiff claims of the defendant corporation the sum of $1,999 damages for the breach of a contract, in that plaintiff, through his agent, J. E. Cameron, heretofore, on, towit, the 31st day of December, 1903, at Notasulga, Ala., in the county of Macon, employed for a reward the defendant, who was then and there engaged in the business of transporting messages by wire and electricity, to transport from Notasulga, Ala., to Montgomery, Ala., a message to the plaintiff, as follows, 'Come on next train your wife is sick. J. E. Cameron,' and to deliver the same to plaintiff in case of the Atlantic Coast Line Railroad Shops, all of which defendant agreed to do. And plaintiff avers: That he had theretofore carried his wife to her mother's at Notasulga, Ala., to be sick. That he had instructed his brother-in-law, the said J. E. Cameron, to send him a telegram in care of said Atlantic Coast Line Railroad Shops, if his wife should become sick before his return, and he had also instructed the general foreman of said shop to open any telegram that might be delivered for him and notify him (the plaintiff) at once of the contents of any telegram announcing the condition of plaintiff's wife; plaintiff being then and there engaged as a locomotive engineer for the said Atlantic Coast Line Railroad, and being out of the city of Montgomery.

Plaintiff had also arranged with said foreman to relieve him from his duty at once in such case, and plaintiff avers that defendant addressed said telegram to W. H. Powell, instead of to W. H. Rowell; that it was not delivered in care of the Atlantic Coast Line Railroad Shops, and hence was not forwarded to said plaintiff by said foreman according to agreement, and plaintiff on account of said breach of contract by defendant suffered great damage, in this: (1) He was delayed more than two days in reaching the bedside of his sick wife, whereby he suffered great mental distress and anguish. He suffered great mental distress and anguish in that his wife was deprived of his presence and help during the first days of her illness, and by reason of being deprived of the comfort of administering to her wants during her illness. (3) He suffered great mental distress and anguish in that his wife, in his absence, failed to receive in time the services of consulting physicians of great skill and experience, and avers that he would have provided such physicians for her had he been present." Count 2 is the same as count 1 down to and including the telegram, and adds: And plaintiff avers that the defendant failed willfully and wantonly to deliver the said telegram as it agreed to do, to plaintiff's damage in this: (Same damage as alleged in first count, and this additional averment). That his said wife lacked necessary, skilled attention during her illness before she was reached by plaintiff, and contracted blood poison, or other disease, from the lack of such skilled medical attention, whereof she died. And plaintiff avers that had such telegram been properly and promptly delivered, he would have secured for her the necessary skilled medical attention, and her life might have been saved. Hence this suit."

The defendant moved to strike from the first and second counts the second and third assignment of damages alleged to have been sustained by the plaintiff, on the grounds that plaintiff was not entitled to recover for any mental anguish or distress or suffering his wife sustained, and that the damages claimed were too remote and speculative. The defendant filed the general issue and the following special pleas:

"Plea 6. And for further answer to the complaint, heretofore filed in said cause, and to each count thereof, separately and severally, the defendant says: That at the time of the receipt of the message referred to in each of said counts of the complaint, which was alleged to have been sent by the plaintiff's agent to the plaintiff in the city of Montgomery, the plaintiff was not in the city of Montgomery, and was not at the Atlantic Coast Line Railroad Shops, in the city of Montgomery, to whose care said message was addressed to the plaintiff, by his alleged agent, nor was the plaintiff at his place of residence, or boarding house, in the city of Montgomery, at the time of the receipt of said message, and that said message could not therefore be delivered to the plaintiff; that, said message being addressed to no other person than the plaintiff, the defendant could not, according to his contract with the plaintiff, through his said alleged agent, deliver the said message to any other person, and did not do so; and that the defendant, through its agents and employes, sought to find the plaintiff in the city of Montgomery, but could not do so, and for this reason, and for the reasons hereinabove given, said message was not deilvered.

"Plea 7. And for further answer to said complaint, heretofore filed, and to each and every count thereof, separately and severally, the defendant says: That, notwithstanding the fact that the plaintiff may have been

expecting a telegram from his said alleged agent, as averred in said complaint, he left the city of Montgomery without giving information or instructions to the defendant to transmit any message sent to him at Montgomery to Dothan, Ala., his place of destination, nor did he notify or instruct the defendant to deliver any message that might be received in Montgomery for him to any other person; that said alleged message described and referred to in each count of the complaint, being addressed to the plaintiff alone, could not, under the contract with the plaintiff, be delivered by the defendant to any other person; that by reason of the failure or negligence on the part of the plaintiff to notify or instruct the defendant to transmit any message that might be received in Montgomery for him to Dothan, Ala., or deliver any such message that might be addressed to him at Montgomery, Ala., to some person in the city of Montgomery for transmission to him at Dothan, Ala., plaintiff failed to receive said message; that the defendant was unable to deliver said message as contracted for with the plaintiff's said alleged agent; and that the failure to deliver said message was due to such failure on the part of the plaintiff.

"Plea 8. And for further answer to the complaint heretofore filed and to each count thereof, separately and severally, the defendant says: That prior to the time the message was received by the defendant at its office at Notasulga, Ala., as alleged in each count of said complaint, and prior to the receipt of said message, addressed to the plaintiff, at Montgomery, Ala., the plaintiff left the city of Montgomery and went to Dothan, Ala.; that the plaintiff failed to notify the defendant or its agents at Montgomery, Ala., of his destination, and failed to instruct them to transmit any message that he might receive from Notasulga, Ala., to Dothan, Ala.;

and failed to instruct them to deliver any message direc-
ted to him from Notasulga, Ala., to the foreman, or any
other person, at the Atlantic Coast Line Railroad
Shops; that by reason of the plaintiff's absence from the
city of Montgomery and his failure to so instruct the
defendant, or its agents at Montgomery, Ala., it was un-
able to deliver said message; that, by reason of such fail-
ure on the part of plaintiff, the defendant was without
fault or negligence in failing to deliver said message;
and that notwithstanding the said message addressed to
the plaintiff at Montgomery, Ala., as alleged in said
complaint, was not delivered to the plaintiff, at Mont-
gomery, Ala., the plaintiff arrived at the bedside of his
sick wife as soon as he would have done so, if the mes-
sage had been delivered at the Atlantic Coast Line Rail-
road Shops.

"Plea 9. For further answer to each of the counts of
the complaint, separately and severally, this defendant
says: That, after the receipt of the message or telegram
described in the complaint, the defendant sought to
promptly deliver the same; that the defendant was in-
formed that the person to whom the telegram was ad-
dressed was not in Montgomery, but was in Dothan;
that thereupon the defendant sent a service message to
Notasulga, Ala., the place from which the alleged tele-
gram was sent, announcing the fact that the sendee of
said message, or the person to whom it was addressed,
was not in Montgomery, but was in Dothan, Ala.; that
this service message was delivered by the defendant's
agent to the said J. E. Cameron, the alleged agent of
the plaintiff; that thereby the said J. E. Cameron, who
was the sender, and alleged to be acting as agent for the
plaintiff, was notified that the plaintiff was in Dothan,
Ala.; that, notwithstanding this information, the said
Cameron, as such alleged agent of the plaintiff, did not

have said message repeated to the plaintiff at Dothan, Ala., or did not send any message to the plaintiff at Dothan, Ala.; and that by reason of the failure of the said Cameron, acting as the agent of the plaintiff, to so send a message to the plaintiff at Dothan, Ala., or to have the message which he had sent to him at Montgomery, Ala., repeated to him at Dothan, Ala., the plaintiff failed to receive information of his wife's sickness, and for such reason suffered the damages, if any, which are alleged in each of the counts of the complaint, in this cause."

Plaintiff demurs to plea 5 upon the ground that the defendant cannot limit its liability by printed conditions on the back of telegraph blanks in cases of repeated messages, so far as negligence is concerned on the part of the defendant. Plaintiff demurs to plea 6 upon the ground that it appears from said plea that the message was sent in care of the Atlantic Coast Line Railroad Shops, and it was the duty of the plaintiff to leave the said message in care of the Atlantic Coast Line Railroado Shops, upon the further ground that a delivery of the message to the Atlantic Coast Line Railroad Shops at the proper time and in the proper name would have acquitted the plaintiff of |all negligence in the premises. Plaintiff demurs to plea 7 upon the ground that no obligation rested upon the plaintiff to give instructions to defendant to transmit any message to him or to notify the defendant of his place of destination. Plaintiff demurs to plea 8 upon the ground assigned to plea 7. The facts sufficiently appear in the opinion of the court.

In its oral charge, the court said to the jury: "We know, gentlemen, that electricity, like some other forces of nature, acts uniformly. Under similar circumstances, it always acts in exactly the same way. You know ex-

actly what to expect of it. There can't be any mistake about things of that sort, and, if a letter is given to the telegraph wire at Notasulga, necessarily the machine at Montgomery responds to that message with exact similarity. So that if this message was—if some mistake occurred in it—if, when the message was received in Montgomery, it was not addressed to the same person, to whom it was addressed when put on the wire in Notasulga, necessarily that fact arose from the default, neglect, or miscarriage of the receiving operator at this end. And that, in part at least, is exactly the charge which this plaintiff makes against the defendant, and if the plaintiff shall have satisfied you reasonably, by the evidence in the case, that such neglect or miscarriage of that sort occurred in the transmission of his telegram, then he has made out, so far, a charge of negligence against this defendant, or what is the same thing for all the purposes of this case, against some of the agents of the defendant employed in and about the transmission of this telegram."

And, also: "It is the law of this state that if, when plaintiff learned that by reason of the negligence of the defendant, if there was negligence, he had been kept away from the bedside of his wife while she was sick, when it was his desire and wish to be with her and do what he could for the relief of her suffering after he realized that, then, in a retrospective and reflective way, he may have suffered mental anguish because he had been kept away from his wife's bedside."

And, also: "Now, there is one other element of damage which you have to consider in this case. You will recollect that there is no claim, as I have already stated, and, as the plaintiff will concede, there is no claim, that there is any wrong done by Mr. Reeves, the agent at Notasulga, in giving this message to the wire. Necessarily,

it seems that the mistake occurred in receiving it at this office. After it was received, however, some efforts were made for delivery. The question is whether you will find what was then done to have been simple negligence or not, and that is a question for you, and that is the sort of negligence I have already been discussing for you. But plaintiff does not contend that the facts up to this time would constitute any more than simple negligence, or would entitle the plaintiff to receive anything more than compensatory damages, which is the sort of damage I have already described to you. But now the plaintiff goes a little further, and says, admit that up to this time the defendant was guilty of simple negligence only, and admitting that therefore we are entitled to recover compensatory damages only, yet at this time the agent of the defendant became aware of the fact that a mistake had been made, because he says that the proof in this case should reasonably satisfy you that the telegram not having been delivered up to this time, and some inquiry having been made about it, the defendant's agents at this point were apprised of the fact that a mistake had been made and were then at that time informed that the message was really intended for Rowell, and not Powell. And now the plaintiff's contention is that, with this new knowledge, this new light on the subject, the defendant and its agents made no effort then to deliver that telegram; that with reckless disregard for the rights and feelings of the plaintiff, with indifference to the duties assumed by it in carrying out the contract, and with intentional neglect of the plaintiff's right under the contract, they refused and failed to make any further effort to deliver the telegram. Well, now, whether the defendant's agent became apprised of this mistake at or about this time or not is a question which you will determine from the evidence in this case.

And if you determine that the defendant and its agent were so apprised of its mistake, and thereupon, being warned by the contents of the telegram itself, in some degree, at least, of its importance and significance to this plaintiff, failed to make any further effort to deliver it, then it will be for you, as jurors, looking at all the surroundings of these parties, to say whether their further failure ought to be denounced by you as inten-tional and wanton, and, if so, and you have already found that the plaintiff is entitled to recover the 25 cents damages, then to that you may superadd also as well the compensatory damages which I have heretofore mentioned to you, if the proof satisfied you that plain-tiff is entitled to such. To this, I say you may add, on the hypothesis last made by me, such sum of money within the amount claimed in the complaint, as you think proper, not by way of compensating the plaintiff for his loss and damage, but by way of punishing the wrongful act of the defendant, in order that other de-fendants, or this defendant on some other occasion, un-der similar circumstances, may be warned not to repeat similar wrongs."

The court refused the following charges to the defend-ant: "(4) If the jury believe the evidence in this case, the plaintiff cannot recover for any mental distress or anguish occasioned by his failure to reach the bedside of his wife for two days after the telegram described in the complaint was sent. (5) If the jury believe the evi-dence in this case, they cannot find for the plaintiff for any mental distress or anguish by reason of the fact that his wife was deprived of his presence and help dur-ing the first days of her illness. (6) If the jury believe the evidence in this case, they cannot award plaintiff any damages that may have been occasioned by reason

20 R

of his being deprived from administering to his wife during her illness. (7) If the jury believe the evidence in this case, plaintiff can only recover damages for mental suffering that plaintiff may have sustained after he reached Notasulga on January 2, 1903. (8) The court instructs the jury that if they believe from the evidence in this case that plaintiff could not have received the telegram sent to him, as averred in the complaint, except by means of some act done by some third party who was no party to the contract, then the plaintiff is not entitled to recover the damages claimed in the complaint. (9) The court instructs the jury that, if the jury believe the evidence in this case, the plaintiff cannot recover for his not knowing that his wife was sick as soon as he would have known it, if the message described in the complaint had been delivered at the Atlantic Coast Line Railroad Shops. (10) The court instructs the jury that the plaintiff cannot recover any damages in this case for any mental anguish or distress he may have suffered when he found that his wife was sick. (11) If the jury believe the evidence in this case, the plaintiff is not entitled to recover damages for any mental distress and anguish because his wife was deprived of his presence and help during the first days of her illness, and by reason of being deprived of the comfort of administering to his wife's want during her illness." Instruction 12 is set out in the opinion. "(13) The court instructs the jury that under the evidence in this case the plaintiff is not entitled to recover damages for his own mental suffering or distress at the thought of how plaintiff's wife may have suffered during his absence. (14) The court instructs the jury that if they believe from the evidence in this case that, in order for the telegram sent to the plaintiff to have been delivered to or received by the plaintiff, it was necessary for some action by an intervening agen-

[Western Union Tel. Co. v. Rowell.]

cy over whom the defendant had no control, then the plaintiff is not entitled to recover any damages for mental anguish or pain of mind. (15) Under the pleadings in this case, there can be no recovery by plaintiff on account of error in change of the letter 'R' to the letter 'P' in the transmission of the message from Notasulga to Montgomery. (16) Under the evidence in this case, the contract between the parties was that the defendant should transmit the message to Montgomery and deliver the same to plaintiff with all reasonable dispatch, and there was no duty on the part of the defendant or its agent to leave the telegram at the Atlantic Coast Line Railroad Shops, or with any person or officer at said shops."

RUSHTON & COLEMAN, for appellant. In order for the sender or sendee of a message to recover damages for failure to properly transmit and deliver a message, it is necessary that the injury complained of should be the proximate cause of the negligence of the Company, or a breach of the contract. This is so well recognized in all telegraph cases, in Alabama, that it is not necessary to cite any authorities in reference thereto. The principle is well announced in the 27 Am. & Eng. Enc. of Law, page 1035. The sender must be shown to have been an agent of the sendee, when suit is brought by the latter. —*Western Union Telegraph Co. v. Adair,* 115 Ala. 441; *Postal Telegraph Co. v. Ford,* 117 Ala. 672; *Western Union Telegraph Co. v. Millsap,* 135 Ala. 415; *Frazer v. Western Union Telegraph Co.,* 84 Ala. 487. There can be no recovery for mental anxiety caused by suspense and sympathy.—*Rowell v. Western Union Telegraph Co.* (Texas) 12, S. W. Rep. 534; *Taliferro v. Western Union Tel. Co.* (Ky.), 54 S. W. Rep. 825; *Sparkman v. Western Union Tel. Co.* (N. C.), 41 S. W. Rep. 881;

*Western Union Telegraph Co. v. Cooper,* 9 S. W. Rep.
598; *Western Union Telegraph Co. v. Reid,* 84 S. W.
Rep. 296.    There can be no recovery where there is
something to be done by some other person or agency,
—where there must be some intervening step taken,—
in order for plaintiff to be informed of contents of mes-
sage, or given an answer to the message sent by plaintiff.
—Authorities supra; *Talieferro v. W. U. T. Co.* (Ky.),
54 S. W. Rep. 825, and authorities cited; *Telegraph Co.
v. Linn,* 87 Tex. 17, 26 S. W. Rep. 490; *Chapman v. Tel-
egraph Co.,* 90 Ky. 265, 13 S. W. Rep. 880; *Smith v. Tel-
egraph Co.,* 83 Ky. 104.

PEARSON & RICHARDSON, and JOHN V. SMITH, for ap-
pellee.    There was no error in sustaining demurrer to
the plea to the jurisdiction of the court.—*McIver v. F.
C. & P. R. R. Co.,* 110 Ga. 223.    The evidence clearly dis-
closes the negligence of the operators both at Montgom-
ery and Notasulga.—*W. U. Tel. Co. v. Cunningham,* 99
Ala. 314; *W. U. Tel. Co. v. Seed,* 115 Ala. 676.    Hence
the plaintiff was entitled to punitive damages.

DENSON, J.—The complaint in this case contains
two counts, each of which claims damages for mental
pain and suffering on account of an alleged breach of a
contract, between the plaintiff and the defendant, for
the transmission by the latter, from Notasulga, Ala., to
the plaintiff at Montgomery, Ala., of a telegraphic mes-
sage in the following language: "Notasulga, Ala., Dec.
31st, 1903.    To W. H. Rowell, Care of A. C. L. Railroad
Shops, Montgomery, Ala.    Come on next train your wife
is sick.    J. E. Cameron."

The averments of the complaint show that the plain-
tiff had arranged with Cameron to send the message;
and the defendant's agent was informed, before the mes-

[Western Union Tel. Co. v. Rowell.]

sage was delivered for transmission, of this arrange-
ment. Therefore the necessary contractual relation is
shown to have existed between the plaintiff and the de-
fendant in reference to the transmission of the message.
—W. U. Tel. Co. v. Cunningham, 99 Ala. 314, 14 South.
579; W. U. Tel. Co. v. Wilson, 93 Ala. 32, 9 South. 414,
30 Am. St. Rep. 23; W. U. Tel. Co. v. Adair, 115 Ala.
441, 22 South. 73; Postal Tel. Co. v. Ford, 117 Ala. 672,
23 South. 684; Manker v. W. U. Tel. Co., 137 Ala. 292,
34 South. 839. It has been distinctly held by this court
that, in actions of tort for the failure to deliver a tele-
graphic message, where there is no claim or proof of
damages for physical injuries or injuries in estate, there
can be no recovery of damages for mental suffering.—
Blount v. W. U. Tel. Co., 126 Ala. 105, 27 South. 779.
In actions for the breach of a contract (actions ex con-
tractu) there may be a recovery for mental suffering
when only nominal damages are sustained.—Blount's
Case, supra; W. U. Tel. Co. v. Blocker, 138 Ala. 484, 35
South. 468; W. U. Tel. Co. v. Waters, 139 Ala. 656, 36
South. 773. Under a part of the oral charge of the court
in this cause, which was excepted to, it was left to the
jury to determine whether or not they would award pu-
nitive damages. In actions ex contractu (for the
breach of a contract) the motive or intent of the defend-
ant will not in general be considered.—12 Am. & Eng.
Ency. Law, 20, and notes 5 and 6 to the text; 13 Cyc.
div. (F) 113; International Ocean Telegraph Co. v.
Saunders, 32 Fla. 434, 14 South. 148, 21 L. R. A. 810;
Field on Damages, § 94; 3 Parsons on Cont. 180; Law-
son, Cont. § 463. The only exception to the rule seems
to be in actions for breach of contract of marriage. It
is also probably true that, in actions for breach of stat-
utory bonds, that stipulate liability for damages for the
vexatious prosecution of a suit, such damages may be

recovered.—12 Am. & Eng. Ency. Law, 21. It may there-
fore be important, in reviewing the oral charge of the
court excepted to, to determine the nature of the com-
plaint, for, according to the foregoing considerations
and authorities, conceding, without deciding, that ex-
emplary damages may be recovered when the action is
ex delicto, if the counts are ex contractu, the oral charge
in respect to exemplary or vindictive damages is erron-
eous and must work a reversal. We believe it is unnec-
essary to enter upon an argument to demonstrate that
the counts are in assumpsit, and not in case, for a care-
ful reading of them will show that the gravamen of each
is the breach of the promise or contract made, and not
the breach of a duty growing out of the contract. And
the averment in the second count "that the defendant
failed, willfully and wantonly, to deliver said telegram
as it agreed to do," cannot operate to change the char-
acter of the action from one ex contractu to one ex de-
licto.—*Manker v. W. U. Tel. Co.*, 137 Ala. 292, 34 South.
839. Therefore the counts are each ex contractu. This
conclusion is fully fortified by the following cases: *W.
U. Tel. Co. v. Krichbaum*, 132 Ala. 535, 31 South. 607;
*W. U. Tel. Co. v. Waters*, 139 Ala. 652, 36 South. 773,
and the authorities there cited. Another view: If the
counts were ex delicto (in case) then, according to the
*Blount Case, supra*, the oral charge of the court in re-
spect to mental anguish or suffering as an element of
damages, taken in connection with the fact that there is
no claim or proof whatever of any injury to the plain-
tiff's person or estate, is erroneous, and a reversal would
necessarily follow.

So far we have not proceeded with regard to the
order in which the questions here for review are presen-
ted by the assignment of errors. We deemed it necessa-
ry to first determine the nature of the action, and, there

[Western Union Tel. Co. v. Rowell.]

being no assignment of error in respect to the pleading insisted upon, which presents the question, we have considered that question in the order in which it is treated. The first, second, third, and fourth grounds in the assignment of errors are expressly waived in the brief of appellant's counsel. To pleas 6, 7, 8, and 9, the court sustained a demurrer. These pleadings are addressed to the complaint and to each count separately. It has been observed that in each count of the complaint the message is described as addressed to the plaintiff ,"Care of the Atlantic Coast Line Railroad Shops," Montgomery, Ala. In pleas 6 and 7, the defendant seeks to avoid liability by averring that the plaintiff was not in the city of Montgomery and was not at the Atlantic Coast Line Railroad Shops, to whose care the message was addressed, nor at his place of residence, or boarding house, in the city of Montgomery, and that the message could not therefore be delivered to the plaintiff. In *Lexer v. W. U. Tel. Co.*, 131 N. C. 355, 42 S. E. 819, 59 L. R. A. 477, a telegram was addressed to the plaintiff, care of Southern Railway Company, Salisbury, N. C. The defendant showed that the plaintiff could not be found in Salisbury, and that the message was delivered to the ticket agent of the Southern Railway Company. The jury was instructed by the trial court that the ticket agent was a proper agent of the Southern Railway Company, to whom a delivery of the message might be made; that a delivery to him was a delivery to the Southern Railway Company; that, as the message was directed to the plaintiff in care of the Southern Railway Company, the said company was made his agent; and that a delivery to the agent discharged the defendant from further liability on account of the message. The instruction, on appeal, was approved by the Supreme Court, speaking through Furches, C. J., upon the theory that the plain-

tiff, by having the message directed as it was, made the company his agent to receive it; and the court held that it might have been delivered at once to that company. In support of its ruling, the court cited *Western Union Tel. Co. v. Houghton*, 82 Tex. 561, 17 Sup. Ct. 846, 15 L. R. A. 129, 27 Am. St. Rep. 918. The substance of the decision in the case cited is that, "as the telegram was addressed to the care of another person than the addressee, a delivery to such person would have been in compliance with the obligation of the defendant." We think these decisions are predicated upon sound principle. A prompt delivery of the message to the Atlantic Coast Line Railroad Shops—that is, to some agent of the shops—would have been a compliance with the defendant's contractual obligation, and it was its duty to so deliver the message. Nor was the plaintiff under any duty to give instructions to the defendant to transmit the message to him or to notify defendant of his place of destination. In this view, the sixth, seventh, and eighth pleas here in judgment, failed to present a defense to the cause of action as stated in either of the counts, and the demurrer thereto was properly sustained.

The ninth plea varies somewhat from the averments of the sixth, seventh, and eighth pleas, and seeks to avoid liability on account of the plaintiff's being out of the city of Montgomery at the time the message was received by the defendant, and on account of the failure of Cameron, plaintiff's agent, upon being notified by defendant of plaintiff's absence, and that he was at Dothan, Ala., to send a message, or repeat the message, to the plaintiff at Dothan. It would seem to be a sufficient answer to this plea to say that the defendant's contractual obligation was to deliver the message to the plaintiff, in care of the railroad shops, and that a delivery to the shops would have been a complete compliance with

the obligation. This case is distinguishable from that of *Western Union Telegraph Company v. Seed*, 115 Ala. 670, 22 South. 474. There, three messages of the same tenor were sent to the same addressee, at Mobile; one in the care of a hotel, and the other two each in the care of a friend of the addressee, and each of whom was a prominent citizen of Mobile. The telegraph company received them all, but put them in one and the same envelope, and delivered them to the clerk of the hotel. It requires no argument to show that the duty devolving upon the company was not met by that delivery, and the court properly held that it was the defendant's duty to deliver each message according to its address. The proof showed that, if this had been done, the message would have promptly reached the addressee. In the case in judgment, as we have already shown, a delivery of the message, at the railroad shops, to the clerk, the master mechanic, or some other agent of the shops, would have been a compliance with defendant's contract; and especially so if, upon inquiry, it was ascertained that the plaintiff was not there; and, according to the averments of the complaint, if the defendant had made such delivery of the message, it would have been forwarded to the plaintiff. In the light of the authorities supra, it must be held that the demurrer to plea 9 was properly sustained; and that, for the same reasons, charge 16 refused to the defendant was properly refused.

We come now to a consideration of grounds in the assignment of errors which relate to rulings on the admissibility of evidence. The evidence showed that the operator who received the message at Montgomery made the mistake of substituting the letter P for R, in the surname of the addressee, plaintiff, so that the address, as he took it and as he wrote it out, was W. H. Powell, instead of W. H. Rowell. When the message was received,

it was delivered to a messenger, who carried it to the Atlantic Coast Line Railroad Shops; but, on his making inquiry for Powell, he was informed that no one by that name was in the employment of the shops, so he did not leave the message at the shops, but returned to the defendant with it. On the return of the plaintiff from Thomasville, Ga., whither he had gone on his regular trip as a locomotive engineer on the Atlantic Coast Line Railroad, he was informed on January 2, 1904, by some one of his fellow employes, that there had been a message there, addressed to W. H. Powell, but that informant did not know whether it was for him or not. Plaintiff, as a witness in his own behalf, was then asked what he did on receiving this information. The evidence shows that he called over the phone for connection with the Western Union Telegraph Company in Montgomery, and had a conversation with the person who answered the phone after connection was given. The plaintiff did not know who the person was who talked with him over the phone. "Courts of justice do not ignore the great improvement in the means of communication which the telephone has made. Its nature, operation, and ordinary uses are facts of general scientific knowledge, of which the courts will take judicial notice as part of public contemporary history. When a person places himself in connection with a telephone system through an instrument in his office, he thereby invites communication, in relation to his business, through that channel. Conversations so held are admissible in evidence, as personal interviews by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business there carried on. And the fact that the person or voice of the person at the telephone was not identified does not render the conversation inadmissible. This ruling is intended to determine merely the admis-

sibility of such conversations in such circumstances, but not the effect of such evidence after its admission. That is a jury question."—*Wolfe v. Missouri Pacific Railway Co.*, 97 Mo. 473, 11 S. W. 49, 3 L. R. A. 539, 10 Am. St. Rep. 331. Here, the evidence tends to show that the person answering the phone, and with whom the conversation was had, under the circumstances, was one who had authority to speak for the company. Of course, whether he was not, and whether or not such a conversation was had, were questions for the jury. The evidence elicited by the conversation over the phone tended to show that the defendant was lacking in due diligence in the effort made to deliver the message. This is the theory on which, as is shown by the bill of exceptions, the trial court admitted it with certain limitations; and we are of opinion that no error is shown in the ruling of the court in that respect.

The plaintiff's wife was in a delicate condition, but it was not expected that she would be confined before about the 10th of January, 1904; and plaintiff had, some time in December, 1903, carried her to her mother's home, at Notasulga, that she might be with her mother during confinement. He visited his wife on the 25th of December, 1903, and on taking leave of her on the night of the 25th, to return to his work, informed her that he would make arrangements with Mr. Cameron (his and her brother-in-law) to telegraph him should she be taken ill. He went out on his regular run, from Montgomery, Ala., to Thomasville, Ga., on the 30th of December. The wife became sick on the 31st of December, and the dispatch was received by the defendant on the same date at Montgomery; but it was never delivered to the plaintiff, nor to any one at the railroad shops. He returned to Montgomery and went to Notasulga on the 2d day of January. He found that his wife had given birth to a

child, and was in a very nervous, restless condition. The plaintiff had made arrangements with the Atlantic Coast Line Shops to forward the telegram to him, and the evidence further showed that if it had been forward-ed he would have received it in time to reach Notasulga on the evening of December 31, 1903.; whereas, he did not reach that place until the afternoon of January 2, 1904. It was competent to prove that the wife was sick and nervous when the plaintiff reached her, and that she had been sick before he arrived there, and the declara-tions of the wife, made to the plaintiff when he reached her, to the effect that she had been "mighty" sick and nervous, were competent for that purpose; and it was certainly competent to prove her condition by the at-tending physician, Ward. The court limited such evi-dence to this purpose, and we find no error in the ruling. —*Eckles & Brown v. Bates,* 26 Ala. 655; *Rowland v. Walker,* 18 Ala. 749.

We come next to consider parts of the oral charge of the court that were excepted to by the defendant, and the written charges refused to the defendant. The sec-ond and third written charges are bad in form, and for this reason, if for no other, the court was justified in refusing them.—*L. & N. R. R. Co. v. Sandlin,* 125 Ala. 585, 28 South. 40; *Goldstein v. Leake,* 138 Ala. 573, 36 South. 458. But the affirmative charge was requested and refused, and the defendant insists that it presents the same question for review which it sought to present by the second and third charges. It is averred in the first count of the complaint that the plaintiff had "instruct-ed the general foreman of the Atlantic Coast Line Shops to open any telegram that might be delivered for him, and to notify him (plaintiff) at once of the contents of any telegram announcing the condition of the plaintiff's wife." In support of the contention that the affirmative

charge as to the whole case should have been given, the appellant insists that there was no proof of this averment. But this contention, we find, is not borne out by the record. From the plaintiff's testimony (see page 19, Record) the jury was fully warranted in inferring that such an arrangement as that averred was made by the plaintiff. While the averment is not found in the second count of the complaint, yet the appellant contends that it is indispensable to plaintiff's case to prove the facts contained therein to authorize a recovery on the second count. It is, in view of what has been said as to the state of the proof, unnecessary for us to express any opinion as to the indispensableness of such proof, in the absence of the averment in the second count. So, on the theory of lack of proof of the averment, this contention of the appellant is unavailing.

Next, it is insisted that as the telegram was addressed to the plaintiff, care of the Atlantic Coast Line Railroad Shops, the plaintiff being absent, under the pleadings and proof, the receipt of the message by the plaintiff, even though it had been promptly delivered to the shops, depended on the act of a person over whom the defendant had no control; and that, as there can be no certainty as to whether the telegram would have been sent or delivered to the plaintiff by such person, the plaintiff has shown no right of recovery. The duty of the defendant was to deliver the message to the plaintiff, if found, and, if not found, then to the shops. Nothing short of this would have been a compliance with the contract made to deliver the message; and this contractual obligation, as the evidence tends to show, could have been easily complied with. To adopt the defendant's insistence would be to allow telegraph companies immunity from liability when telegrams are addressed as was the one here, by mere speculation as to what

would be the conduct of a trusted agent of the sendee under agreement to forward such telegrams; more than that, it would necessarily involve the presumption that the agent of the sendee would act in bad faith towards him. Appellant in its brief says that this insistence presents an interesting question and one which has never been passed upon by this court. It is an interesting question; but, while the precise question may never have been considered by the court, we think that this court, in the case of *Western Union Telegraph Company v. Henderson,* 89 Ala. 510, 520, 7 South. 419, 18 Am. St. Rep. 148, has laid down the principle contrary to the insistence of the appellant. In that case an urgent telegram was sent by the plaintiff to a physician who lived in a village five miles distant from the plaintiff's home, calling him to come and see plaintiff's wife. The telegraph company sought to prove, in defense of a suit for failure to deliver, that it was not the custom of the physician to make professional calls at a distance without prepayment of his charges. On objection, the proof was disallowed. Reviewing the ruling, the court, through Stone, C. J., said: "There was no error in this. If the doctor lived within the area of free delivery (about which there was conflict in the evidence), it was not for the telegraphic operator to speculate on the chances that the summons would or would not be obeyed." So we say, here, the duty of the defendant was to deliver the telegram to the shops, in the absence of the plaintiff, and it had no right to speculate on the chances that the shops would or would not forward the same to the plaintiff. Moreover, we think the proof affords a reasonable inference that if the telegram, properly addressed as the operator (Reeves) swore he sent it from Notasulga, had been delivered at the shops, the natural consequence would have been the forwarding of it to the plaintiff. At

[Western Union Tel. Co. v. Rowell.]

least, the defendant should not be allowed to speculate, in the face of an agreement made between the plaintiff and his agent there, that it would not have been forwarded. The cases from other states, cited by appellant, do not, when submitted to critical examination, conflict with our views. On these considerations, the general affirmative charge and special charges 8 and 14, refused to the defendant, were properly refused.

The remaining charges to be considered relate to the measure of damages in respect to mental suffering. Whatever may be the decisions of other courts, this court is committed to the doctrine that, in actions of this character, damages for mental suffering may be awarded. But this doctrine finds ample support in the decisions of other respectable courts. "The cases rest upon the reasonable doctrine that where a person contracts, upon a sufficient consideration, to do a particular thing, the failure to do which may result in anguish and distress of mind on the part of the other contracting party, he is presumed to have contracted with reference to the payment of damages of that character in the event such damages accrue by reason of a breach of the contract on his part." Here, the agent of the defendant, at Notasulga, was acquainted with Mrs. Rowell's condition, and the plaintiff had notified him as to the importance of the telegram; and when it was received by the defendant at Montgomery it heralded its own importance, the urgency of an early delivery, the relations of the parties, and that, as a natural consequence of a failure to deliver it, the plaintiff would probably endure great mental suffering. So it may be said that mental suffering on the part of the plaintiff was the proximate consequence of the failure to deliver the message.—*W. U. Tel. Co. v. Henderson, supra; W. U. Tel. Co. v. Manker,* 145 Ala. 418, 41 South. 850; *Renihan v. Wright,* 125

Ind. 536, 25 N. E. 822, 9 L. R. A. 514, 21 Am. St. Rep. 249; *W. U. Tel. Co. v. Broesche,* 72 Tex. 654, 10 S. W. 734, 13 Am. St. Rep. 843; *Hale v. Bonner,* 82 Tex. 33, 17 S. W. 605, 14 L. R. A. 336, 27 Am. St. Rep. 850. In No. 6 of 64 Central Law Journal (108), see a review of the authorities pro and con this doctrine. The plaintiff did not know the condition of his wife until the afternoon of the 2d of January, and the proof tended to show that if the telegram had been addressed to W. H. Rowell, and delivered promptly to the Atlantic Coast Line Shops, in Montgomery, it would have been forwarded, and plaintiff could have reached his wife on the night of the 31st of December.

The court, in respect to mental suffering as an element of damages, instructed the jury orally as follows: "If when the plaintiff learned that by reason of the negligence of the defendant, if there was negligence, he had been kept away from the bedside of his wife while she was sick, when it was his desire and wish to be with her, and do what he could for the relief of her suffering, after he realized that, then, in a retrospective and reflective way, he may have suffered mental anguish, because he had been kept away from her bedside." We have been unable to find error in this statement. It does not convey the idea that there might be recovery for the wife's suffering, as appellant's counsel seem to assume; nor does it embrace the idea of mental suffering by plaintiff before he reached Notasulga. Yet it may be, in the light of the facts in evidence, that the plaintiff did endure such suffering before reaching Notasulga, which might properly be considered in estimating the damages. The charge is a partial explanation of the operation of the human mind, and it may be that it is one not embracing a legal principle—that it is one more directly connected with the realm or science of psychology, and about which

the jurors may have been as well informed as was the court. But this does not make the charge reversible error, or error at all. We can readily see how a husband might be greatly grieved by reflecting upon the fact that his wife had been ill, and in need of his consoling presence, for two days, and that, but for the negligence of a telegraph company in failing to deliver a telegram, he might have been with her, to minister to her and render her assistance and consolation. On these considerations the court committed no error in the oral charge under consideration. Nor was there error in refusing written charges 4, 5, 6, 7, 9, 10, 11, 13 and 15.

Written charge 12 is in this language: "If the jury believe the evidence in this case, they cannot assess any damages in favor of the plaintiff because of any anxiety or mental distress he may have sustained by reason of his wife's sufferings." This charge was properly refused, if for no other reason, for that, in view of the evidence, it is misleading. While recovery could not be had for mental suffering based merely on the wife's suffering and superinduced by it alone, yet the suffering and condition of the wife is a factor to be considered by the jury, in connection with the conduct of the company, in arriving at their conclusion as to whether the plaintiff endured mental suffering as a proximate result consequent upon a breach of the defendant's contract with the plaintiff to deliver the telegram, and the jury, by this charge, might have been misled into the belief that her suffering and condition should be excluded entirely.

We have given consideration to all the questions pressed in the argument of appellant's counsel.

For the errors pointed out, the judgment of the court below is reversed, and the cause is remanded.

Reversed and remanded.

TYSON, C. J., and SIMPSON and ANDERSON, JJ., concur.