# WESTERN UNION TELEGRAPH CO. v. REEVES.

No. 1910. Opinion Filed August 20, 1912.

(126 Pac. 216.)

1. **TELEGRAPHS AND TELEPHONES** — Messages — Contract — Breach—Exemplary Damages. Exemplary or punitive damages are not recoverable from a telegraph company for breach of contract to promptly deliver messages.

2. **DAMAGES**—Exemplary Damages—Right to Recover. To authorize a judgment for exemplary damages, in an action sounding in tort, the proof must show some element of fraud, malice, or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's right—as is deemed equivalent to such intent.

   Where there is a want of any of these elements, the damages recoverable are confined to the loss sustained, and nothing more.

3. **TELEGRAPHS AND TELEPHONES**—Messages—Failure to Deliver—Exemplary Damages. While by statute telegraph companies are made common carriers, and required to use the utmost diligence in the delivery of messages transmitted by them, the failure so to do does not alone render such carrier liable for exemplary or punitive damages, as distinguished from compensatory damages.

4. **SAME.** Failure to exercise the degree of care enjoined by statute will subject the carrier in default to liability for the loss sus-

tained, but not for exemplary damages, unless there also exist the additional elements necessary to constitute such latter character of damages.

5.   NEGLIGENCE—"Gross Negligence"—Definition. "Gross negligence" is the want of slight care and diligence. Comp. Laws 1909, sec. 2941.

6.   TELEGRAPHS AND TELEPHONES—Messages—Failure to Deliver—Exemplary Damages. Where there is uncontradicted evidence of a bona fide attempt to deliver a telegram, exemplary damages for willfulness and wantonness cannot be recovered.

(Syllabus by Sharp, C.)

*Error from District Court, Choctaw County;*
*John Cocke, Special Judge.*

Action by Mrs. Claude Reeves against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Stewart & McDonald, George H. Fearons,* and *Shartel, Keaton & Wells,* for plaintiff in error.

*Thomas S. Hardison, Spriggs & Barrett,* and *Stuart, Cruce & Gilbert,* for defendant in error.

Opinion by SHARP, C.   Plaintiff sought to recover of defendant exemplary damages in the sum of $1,750, and for mental anguish in the sum of $225, for failure to deliver, with reasonable dispatch and promptness, a death message sent plaintiff by her stepfather from Greenfield, Mo., on July 5, 1909.   The petition charged, among other things:

"That on the date of said message plaintiff's mother died, and that said message was sent her by her stepfather at her request; that it was prepared and delivered to the defendant at its office in Greenfield, Mo., at 11:20 a. m. o'clock on the 5th day of July, 1909, by the said L. D. Morris, and it was accepted by the defendant to be transmitted at once and without delay to plaintiff; that defendant was informed of the urgent necessity of immediate delivery of the message, and that defendant knew, and was informed at the time of the sending of the message, that the said L. D. Morris was acting as the agent of the plaintiff."

It was further charged in the petition that, although defendant agreed to deliver the message with reasonable dispatch

and promptness, it did willfully and wantonly fail to so deliver it until the 7th day of July, and that, by reason of the willful and wanton neglect of defendant, plaintiff was prevented from attending her mother's funeral, and suffered great humiliation and mortification, in the said sum of $1,750. No actual damages were alleged, though defendant during the trial offered to confess judgment for the price of the telegram and for costs up to the time of the offer. The trial court instructed against the allowance of a recovery for mental anguish, and no cross-error has been assigned on account thereof. The jury returned a verdict in plaintiff's behalf for $500, upon which judgment was rendered.

The averments of the petition show that plaintiff had arranged with her stepfather, L. D. Morris, to send the message, and the defendant's agent at Hugo was informed of this arrangement. Therefore the necessary contractual relation is shown to have existed between the plaintiff and defendant in reference to the transmission and delivery of the message. *Western Union Telegraph Co. v. Rowell*, 153 Ala. 295, 45 South. 73.

Treating, for the time, that the cause of action stated was for a breach of a contract to promptly transmit and deliver the message, we are confronted with the very general rule that punitive damages are not recoverable for the mere breach of contract, irrespective of the motive on the part of the defendant which prompted the breach. 2 Sutherland on Damages (3d Ed.) sec. 390; Field on Damages, sec. 94; Parsons on Contracts, 180; Lawson on Contracts, 463; 12 A. & E. Enc. L. p. 20; 13 Cyc. p. 113; 37 Cyc. p. 1792; *Cumberland Tel. & Tel. Co. v. Cartwright Creek Tel. Co.,* 128 Ky. 395, 108 S. W. 875; *Western Union Tel. Co. v. Benson,* 159 Ala. 254, 48 South. 712; *Western Union Tel. Co. v. Rowell,* 153 Ala. 295, 45 South. 73; *International Ocean Telegraph Co. v. Saunders,* 32 Fla. 434, 14 South. 148, 21 L. R. A. 810; *Russell v. Western Union Tel. Co.,* 3 Dak. 315, 19 N. W. 408. One notable exception to the rule, however, is in case of a breach of a contract to marry, in which exemplary damages may be allowed. The gravamen of the petition charged breach of contract, in that defendant willfully and wantonly failed to deliver the message with promptness and dispatch, as it had under-

taken to do. If, therefore, plaintiff sought to recover exemplary damages on account of a failure to perform the terms of a contract, no recovery can be had, as no more can be recovered as damages than will fully compensate, the party injured.

Treating the action, however, as one sounding in tort, was plaintiff entitled to recover? As a general rule it may be said that exemplary, punitive, or vindictive damages will not be awarded, unless there is proof going to show a wrongful purpose or reckless indifference to consequences, oppression, insult, rudeness, caprice, willfulness, or other causes of aggravation in the act or omission causing the injury, or because the injury was inflicted maliciously, wantonly, or under circumstances of contumely or indignity, or because the circumstances showed a reckless indifference to duty. *Atchison, T. & S. F. Ry. Co. v. Chamberlain,* 4 Okla. 542, 46 Pac. 449. The only allegation in the petition that would tend to meet those requirements is the general allegation that the defendant willfully and wantonly failed and neglected to promptly deliver the message. It was shown by the testimony that the message was delivered to the agent of the defendant company at Greenfield, Mo., about 11:20 o'clock in the forenoon, July 5th, and was received at Hugo at 4:25 in the afternoon of the same day. July 4th came on Sunday, and the 5th was observed as a holiday; the office hours being from 8 to 10 in the forenoon, and 4 to 6 in the afternoon. In addition to any rule of defendant company pertaining to holidays, our statute (section 2955, Comp. Laws 1909) provides that, where the 4th day of July falls upon Sunday, the Monday following is a holiday. When the message was received, the messenger boy was out of the office, but soon returned, and the message was delivered to him at 5 o'clock in the evening. Plaintiff lived with her husband in the Frisco addition to Hugo, three-quarters of a mile from the telegraph station, and one-quarter of a mile out of the free delivery limit, and had resided there about four months. The messenger boy was informed of the importance of the telegram, and went to the post office and made inquiry as to plaintiff's residence. He also inquired on the street, and was informed by one party that plaintiff lived one block west of the Frisco

schoolhouse in the Frisco addition.  He went where directed, and found a Mrs. Everman living there, who told him she did not know anything about plaintiff.  He was directed by Mrs. Everman to a Mrs. Fountaine, who lived one block southeast of the schoolhouse, where she had resided for two years, and made inquiry of her, and was informed that she did not know the plaintiff, and could give him no information regarding her.  The boy's inquiry was made in the presence of the members of Mrs. Fountaine's family, and all present heard what was said.  The boy further inquired of two men who were working on a fence in the vicinity, and then went home to supper about 6:30 o'clock, and returned to the telegraph office at 7 o'clock and redelivered the message to Mr. Duffy, the agent, who had him mail a card in the post office notifying the addressee of the receipt of the message.  The boy made further inquiry on the street the next morning, but made no further visit to the Frisco addition.  Mr. Duffy, the agent, also made inquiry as to plaintiff's residence at the Wall boarding house, where there were several boarders out on the front porch, and stopped at another point several blocks down the street, where a family named Reed resided; the agent having been informed that this family was named Reeves.  The agent then advised his wife of the receipt of the message, and inquired of her if she knew the party; and Mrs. Duffy went to the home of a Mrs. Weddington and there made inquiry, but without result.  A service message was sent to the agent of the defendant company at Greenfield, the following morning, advising him that they were unable to locate Mrs. Reeves, and asking for a better address.  Mr. Duffy was well acquainted in the Frisco addition of the city of Hugo, and a special effort was made to promptly deliver the message.  The testimony of the agent and the messenger boy pertaining to the attempt to locate the addressee was corroborated by the testimony of Mrs. Duffy, Mrs. Weddington, and Mrs. Fountaine, and is practically undisputed.  On the other hand, there was the testimony of Claude Reeves and his brother, J. H. Reeves, concerning a conversation had with Mr. Duffy, several days before the receipt of the message, in which they claimed to have informed him of the place of resi-

dence of Claude Reeves, in the Frisco addition, across the corner from where a Mr. Sprague resided, and the testimony of S. D. Rogers, who told the messenger boy that Claude Reeves resided in the Frisco addition.

Assuming, without deciding, that a principal may be liable in exemplary damages for the acts of his agent, however tortious or unauthorized, where they are performed in the course of his regular business, and without regard to whether such acts are previously authorized or subsequently ratified by the principal, was there such negligence shown by the testimony as would render defendant liable for exemplary damages? Gross negligence, as defined by the statutes, consists in the want of slight care and diligence. Section 2941, Comp. Laws 1909. By section 490, Comp. Laws 1909, telegraph companies are declared to be common carriers, while by section 482, it is enacted that a carrier by telegraph must use the utmost diligence in the transmission and delivery of messages. No penalty, however, is provided for the failure so to do, though by section 519 of the statutes it is provided that every person whose message is refused or postponed, contrary to the provisions of that chapter, is entitled to recover from the carrier his actual damages and $50 in addition thereto. This latter statute was held, in *Butner v. Western Union Telegraph Co.,* 2 Okla. 234, 37 Pac. 1087, not to apply to a failure to deliver a message, but only to the failure to receive or transmit messages in the order presented in a former section of the act. There being no penalty provided, nor statutory right of action given, for the failure to exercise the degree of diligence imposed by statute, it would seem to follow that a recovery for exemplary damages can only be had in case of wantonness, willfulness, recklessness, or malice, or where the negligence is so gross as to amount to wantonness or willfulness, and that where the carrier's breach of duty is the result of mere mistake, or of simple as distinguished from gross negligence, and where there has been an honest effort to perform its duty, no recovery for other than actual damages can be sustained.

In *A., T. & S. F. Ry. Co. v. Chamberlain, supra,* the court in quoting from Thompson on Carriers of Passengers, p. 573, sec. 327, said:

" 'Exemplary,' 'punitive,' or 'vindictive' damages, sometimes called 'smart money,' are only awarded in cases where there is an element of either fraud, malice, or such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice, willfulness, or other causes of aggravation in the act or omission causing the injury."

In a further quotation from Field on Damages, secs. 83 and 84, the court observed:

"The general rule in reference to exemplary or punitive damages is that, wherever the injury complained of has been inflicted maliciously or wantonly, or with circumstances of contumely or indignity, the jury are not limited to simple compensation for the wrong done, but may give the party injured exemplary damages; and malice implies, not merely the doing of an unlawful injurious act, but that it was conceived in the spirit of mischief or of criminal indifference to civil obligations and the rights of others. In cases of gross negligence—and especially so gross as to reasonably imply malice—or where, from the entire want of care or great indifference to the persons or property of others, malice will be imputed, the weight of authority would seem to authorize the assessment of exemplary or punitive damages as a matter of law; but to entitle the plaintiff to recover exemplary damages the negligence should be so flagrant and culpable, or the circumstances of the case show such a reckless indifference to duty and to the security of the lives and limbs of persons or their property, from which malice may be inferred or imputed to the defendant."

While the petition charged that defendant willfully and wantonly failed to deliver the message until the second day following its receipt at the Hugo office, there was a total failure of proof to establish any element of fraud, malice, or such a degree of negligence as indicates a reckless indifference to consequences, or oppression, insult, rudeness, caprice, willfulness or other causes of aggravation in the failure to promptly deliver the message. Keeping in mind that this is an action to recover damages by way of punishment, sometimes called "smart money," as distinguished from actual damages to persons or property, there was a total failure to meet the legal requirements

exacted in such character of cases. There was a reasonable effort to deliver the message. Not only the messenger boy, but the agent, made inquiry of numerous parties of the place of residence of the addressee; and while, under the statute, this may not have been sufficient to absolve the company from all liability in a case where actual damages were sustained, it is sufficient, in the absence of any testimony of malice, fraud, or oppression, actual or presumed, to rebut any contrary inferences that might arise from the testimony, and to defeat a recovery for exemplary damages.

In Jones on Tel. & Tel. Companies, sec. 600, in speaking of exemplary or punitive damages, it is said:

"Actions for the recovery of such damages can only be sustained where there is malice, fraud, or gross negligence engendered in the commission of the act, and, in order to warrant a recovery of such, there must enter into the injury some element of aggravation, or some coloring of insult or malice that will take the case out of the ordinary rule of compensation. If there is a want of any of these elements, the measure of damages is the measure of compensation for the loss sustained, and nothing more."

In Joyce on Electrical Law, sec. 944, it is said that exemplary damages may be recovered of a telegraph company, where it is guilty of such gross negligence in delaying the transmission or delivery of a message as amounts to wantonness or a malicious purpose.

In *Western Union Telegraph Co. v. Westmoreland,* 151 Ala. 319, 44 South. 382, the Supreme Court of Alabama, speaking through Tyson, C. J., said:

"Where the wrong in its essence is the mere failure to perform a contract, involving no insult or outrage to the feelings cognizable by the law, and no actual damage to the person or property of the plaintiff, it cannot be held that the public peace or quiet is offended, and therefore there is no basis for the infliction of vindictive damages. And we think, if this was a case in which vindictive damages were assessable at the discretion of the jury, the proofs would not be sufficient to support a verdict involving their allowance. When an actual trespass is committed, or an act, like slander or libel, necessarily involving in its essence an active and intentional wrong, malice may be inferred

from the act itself; but when the relations of the parties are contractual, and call for the performance of stipulations undertaken, the presumption of innocence which the law uniformly indulges would characterize the omission of performance in this case as unintentional—that is; simple negligence. Best on Evidence (Chamberlayne) sec. 334; *Rex v. Inhabitants, etc., of Twining,* 2 B. & A. 386."

In *Arkansas & Louisiana Ry. Co. v. Stroude,* 77 Ark. 109, 91 S. W. 18, 113 Am. St. Rep. 130, it was held that negligence, however gross, does not justify exemplary damages, unless there was willfulness, wantonness, and conscious indifference to consequences.

In *Butler v. Western Union Telegraph Co.,* 77 S. C. 148, 57 S. E. 757, it was said by the court:

"But here there was undisputed evidence of some effort to deliver. It may be the effort was not sufficiently vigorous to repel the imputations of negligence; but, on the whole, we think the circuit judge was right in holding the mere delay was not sufficient to go to the jury on the issue of willfulness, wantonness, or recklessness, in view of the evidence of efforts to deliver."

*Western Union Telegraph Co. v. Cross' Adm'r,* 116 Ky. 5, 74 S. W. 1098, 76 S. W. 162; *Todd v. Western Union Telegraph Co.,* 77 S. C. 522, 58 S. E. 433.

In *Kopperl v. Western Union Telegraph Co.* (Tex. Civ. App.) 85 S. W. 1018, it was held that:

"To authorize a judgment for punitory damages, the case must contain some element of fraud, malice, or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's right—as is deemed equivalent to such intent."

In *Cumberland Tel. & Tel. Co. v. Paine,* 94 Miss. 886, 48 South. 229, it was held that the trial court erred in submitting to the jury the question of punitive damages, there being a total want of any element of willful, malicious, fraudulent, or oppressive wrongdoing.

Nor is the rule here announced in conflict with, but rather in strict harmony with, that announced and followed by this court in *Lilly v. St. Louis & S. F. R. Co.,* 31 Okla. 521, 122 Pac. 502.

A demurrer to the petition was sustained, and in reversing the case the court said:

"The act of defendant complained of in the case at bar is not one of simple omission to perform a duty. The negligent act does not consist of misdirecting plaintiff, or wrongfully informing her, but of intentional and willful refusal to give her information, under circumstances that made it the duty of the carrier and its servants to give her."

The authorities cited sustain our position in the case under consideration.

Having disposed of the controlling question, a consideration of the remaining issues is unnecessary.

For the reasons stated, the court erred in overruling defendant's request, at the close of the testimony, for an instructed verdict in its behalf, and in submitting the case to the jury, on account of which the judgment should be reversed, and the case remanded.

By the Court: It is so ordered.