## SMITH *et al.* v. BELL.

No. 3064.    Opinion Filed December 8, 1914.

(144 Pac. 1058.)

1.   **APPEAL AND ERROR—Verdict—Evidence.** Where there is any evidence in the record reasonably tending to support the verdict of the jury, the same will not be disturbed on appeal.

2.   **INDIANS—Alienation of Allotments—Evidence of Age—Enrollment Record—Hearsay.** In cases involving the validity of conveyances of lands allotted to members of the Five Civilized Tribes, made prior to the taking effect of the act of Congress of May 27, 1908, c. 199, 35 Stat. 313, where there are living witnesses in court who testify to the age of the allottee, the enrollment records of the Commission to the Five Civilized Tribes as to the age of such allottee are purely hearsay and inadmissible in evidence.

3.   **SAME—Removal of Restrictions—Operation of Statute.** The act of Congress of April 21, 1904, c. 1402, 33 Stat. 189, removing "* * * all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians, who are not of Indian blood, except minors, * * *" authorized a freedman citizen of the Creek Nation to alienate by deed her surplus allotment upon attaining her majority, though a minor at the time of the passage of the act.

(Syllabus by Sharp, C.)

*Error from Superior Court, Muskogee County;*

*Farrar L. McCain, Judge.*

' Action by Alice Smith and Mamie Mitchell against H. H. Bell and another. Judgment for defendants, and plaintiffs bring error. Affirmed.

*A. S. McRea,* for plaintiffs in error.

*N. A. Gibson, H. C. Thurman,* and *T. L. Gibson,* for defendants in error.

Opinion by SHARP, C. On August 15, 1906, the plaintiff in error Mamie Mitchell, *nee* Smith, a freedman citizen of the Creek Nation, in consideration of $1,200 cash in hand paid, executed to the defendants in error, H. H. Bell and J. C. Fast, her warranty deed to forty acres of land theretofore allotted to her, situated in what is now Muskogee county. Thereafter and on the 28th day of· January, 1908, said allottee executed a second warranty deed to said lands to one David P. Thornton, who thereafter conveyed any interest he may have acquired in said premises to the grantees in the first deed, H. H. Bell and J. C. Fast. On December 14, 1910, Mamie Mitchell,· *nee* Smith, joined by her mother, Alice Smith, brought suit in the superior court of Muskogee county to recover possession of the land described in the deeds above mentioned. Both plaintiffs and defendants introduced oral testimony of witnesses as to the age of Mamie Smith. The testimony of plaintiffs tended to show that she did not become eighteen years of age until July 2, 1908, while the testimony of the defendants was to the effect that she became of age shortly prior to the execution of the first deed. The verdict of the jury was in favor of the defendants, and there being evidence reasonably tending to its support, under the well-settled rule of this court, the same will not, on that account, be disturbed.

In addition to the testimony of witnesses, plaintiffs further offered in evidence a certified copy of the enrollment records for the purpose of showing that Mamie was not of lawful age on the respective dates of the conveyances mentioned. Upon objection of defendants, the court overruled plaintiffs' offer to introduce said rolls. Both deeds having been executed prior to 'the passage

by Congress of the act of May 27, 1908 (35 Stat. at L. 313), providing that " * * * the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman," said records were not competent evidence, and the action of the court in not admitting them was proper. *Williams v. Joins,* 34 Okla. 733, 126 Pac. 1013; *Rice v. Ruble,* 39 Okla. 51, 134 Pac. 49; *Perkins v. Baker,* 41 Okla. 288, 137 Pac. 661; *Scott v. Brakel et al.,* 43 Okla. 655, 143 Pac. 510; *Phillips et al. v. Byrd,* 43 Okla. 556, 143 Pac. 684. In fact, the records were purely hearsay and inadmissible for any purpose. *Grayson et al. v. Durant et al,* 43 Okla. 799, 144 Pac. 592.

It is, however, insisted that even though Mamie Mitchell had on August 15, 1906, attained her majority, yet being a minor on April 21, 1904, the restrictions upon her right of alienation had not been removed. To be exact, it is said that the act of April 21, 1904 (33 Stat. at L. 189), removed only the restrictions upon the alienation of lands of Creed freedmen, except homesteads, who were on the date of the passage of said act adults, and did not include those who thereafter reached their majority. The act in this regard reads:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed."

The construction urged is without force. Obviously, the intention of Congress was to pass a general law applicable to certain classes of allottees. Those who were of lawful age at the time of its passage, as well as those who subsequently attained their majority, were within its provision. All others were expressly excluded from its operation. Where the language of a statute, as in the present case, is in general terms, and in words of the present tense, the statute will, as a general rule, be construed to apply not not only to things and conditions existing at its passage, but will also be given a prospective interpretation, by which it will apply to such as come into existence thereafter.

36 Cyc. 1235; *Pacific Milling & El. Co. v. City of Portland,* 65 Or. 349, 133 Pac. 72, 76, 46 L. R. A. (N. S.) 363; *Carter v. Coharie Lbr. Co.,* 160 N. C. 8, 75 S. E. 1074; *Schus v. Powers-Simpson Co.,* 85 Minn. 447, 89 N. W. 68, 69 L. R. A. 887.

Construing Clay's Dig. of Alabama, 112; sec. 47, which provided that:

"All the notes, bills, bonds, or other evidences of debt, held by the state bank or branch banks, payable to the cashier, or the person who has filled the office of cashier, of said bank, or branch banks, may be sued, and collected in the name of the several banks, in the same manner as if they had been made payable dirictly to said bank, or branch banks, by which the paper has been taken or discounted"

—the Supreme Court of that state, in *Davis et al. v. Branch Bank of Mobile,* 12 Ala. 463, held that the act applied equally to notes which were executed at the time of its passage and those which had been made since.

In *United States v. Shock* (C. C.) 187 Fed. 862, which involved the construction of the various acts of Congress on the subject of the right to alienate lands of the citizens of the Creek Nation, and to tax the same when alienable, the United States Court for the Eastern District of this state, in passing upon the contention here urged, said:

"For reasons sufficient to Congress, it saw fit to remove restrictions from the surplus lands of all adult allottees of the classes mentioned. The same reasons apply with equal force to those subsequently becoming adults. No reason is suggested, nor is any conceived, for making any distinction between those of the classes named, who were of age on April 21, 1904, and those subsequently becoming of age. To make such a distinction would, I think, be in direct violation of the plain purpose of the act. * * * In the act of April 21, 1904, the class Congress has in mind consists of those not of Indian blood. It excepts minors of the class named from the operation of the law, merely because of their minority, and no sound reason can be urged why, when minors of the class named become of age, they are not within the purview of the law. * * * "

In *Goat et al. v. United States,* 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841, the United States had brought suit to cancel cer-

tain conveyances made by Seminole freedmen, alleged to be in violation of existing restrictions on alienation. The broad position was taken by the government that all conveyances of the land allotted to members of the Seminole Tribe were void because made prior to the date of patent, under the agreement between the Commission to the Five Civilized Tribes and the Seminoles, set forth in the opinion. The court, however, directed attention to the act of April 21, 1904, removing the restrictions upon alienation by adult allottees of the Five Civilized Tribes who were not of Indian blood, of lands other than homesteads. It does not appear from the opinion when the adult allottees, whose conveyances were sought to be cancelled, attained their majority. It was, however, held that adult grantors, after the passage of the act of April 21, 1904, stood precisely in the same position as though they had received their allotments without any restriction upon their right to alienate the interest thus acquired. The conclusion reached by the court was: (1) That the bill should be sustained so far as it related to conveyances of homestead lands; (2) that it should also be sustained to the extent that it was directed against conveyances of surplus lands made by freedmen allottees who were minors, and thus excepted from the provisions of the act of April 21, 1904, and those made by adult allottees prior to that act; and (3) that so far as the bill related to conveyances of surplus lands, made by adult freedmen allottees subsequent to April 21, 1904, it should be dismissed. See, also, *Deming Investment Co. v. United States*, 224 U. S. 471, 32 Sup. Ct. 549, 56 L. Ed. 847. We find nothing in these recent expressions of the Supreme Court limiting the right to alienate to those who were adults on April 21, 1904, and do not believe it was intended to announce such a rule.

In addition to that part of the act already quoted, the further provision is found:

"* * * And all restrictions upon the alienation of all other allottees of said tribes, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Sec-

retary of the Interior may prescribe, upon application to the United States Indian agent at the union agency."

Giving effect to the same rule of construction insisted upon, the Secretary of the Interior, under this provision of the act, would be without authority to remove restrictions from those who attained their majority after its passage. Such was not the intention of Congress, neither can the position be maintained from the language employed.

The judgment of the trial court should, in all things, be affirmed.

By the Court: It is so ordered.