# FARMERS' & MERCHANTS' BANK OF MOUNTAIN VIEW

## v. HAILE.

No. 4257.  Opinion Filed May 25, 1915.

(149 Pac. 214.)

1. **APPEAL AND ERROR—Verdict—Evidence.** When the evidence reasonably tends to support the verdict and judgment the same will not be reversed on appeal.

2. **EVIDENCE—Nonexpert Witnesses—Competency—Mental Condition of Party.** Evidence of nonexpert witnesses examined, and held to detail facts showing sufficient acquaintance and opportunity for observation to enable them to form a belief or judgment as to the mental condition of plaintiff, and to express opinion in regard thereto.

3. **TRIAL—Instructions.** Instructions reviewed and held to fairly state the law applicable to the case.

(Syllabus by Bleakmore, C.)

*Error from District Court, Kiowa County;*

*Frank Mathews, Judge pro tem.*

Action by David F. Haile, an imbecile and incompetent person, by G. W. Haile, guardian, against the Farmers' & Merchants' Bank of Mountain View, Okla., a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

*Geo. L. Zink* and *J. H. Cline,* for plaintiff in error.

*L. M. Keys, Nestor Rummons,* and *O. J. Logan,* for defendant in error.

BLEAKMORE, C. This action was commenced in the district court of Kiowa county on the 25th day of July, 1910, by the defendant in error as plaintiff against the plaintiff in error as defendant. The parties will be referred to hereafter as they appeared in the trial court.

The petition alleges, in substance, that David F. Haile was an imbecile and incompetent; that he was the owner of a certain tract of land; that the defendant acting through its officers and agents, with the intent to defraud him, and with full knowledge of his imbecility, inveigled him into its bank on two different occasions and induced him to execute notes and mortgages on said land, by the negotiation of which defendant obtained and appropriated to its own use the sum of $1,000.

Defendant answered admitting the execution of the notes and mortgages by plaintiff, but specifically denying that they were made by its procurement, and denying all other material allegations of the petition.

The case was tried to a jury, which returned a verdict for plaintiff in the sum of $1,006.32. Motion for new trial was presented, upon the hearing of which the court directed plaintiff to remit of said amount all in excess of $708.03, which was done, and judgment rendered for said sum. The case is properly here for review.

Defendant assigned as error:

1. "Errors of law occurring at the trial, duly excepted to at the time by defendant below."

II. "That the court below erred in overruling the demurrer

to the evidence interposed by the defendant below, to which ruling
of the court below defendant below duly excepted."

III. "That the court below erred in refusing to give the
peremptory instruction requested on the part of defendant below,
to which action of the court below the defendant below duly
excepted."

IV. "That the judgment and decision of the court below
is not sustained by sufficient evidence, and is contrary to law."

V. "That the court below erred in requiring the plaintiff
below to remit all damages awarded by the verdict in excess of
$708.03, as a condition precedent to overruling defendant's mo-
tion for new trial, to which action of the court below the defend-
ant below duly excepted."

VI. "That the court below erred in entering its order
overruling the motions for new trial filed by the defendant below
and in refusing to grant to the defendant below a new trial, to
which action of the court the defendant below duly excepted."

VII. "That the court below erred in entering the judgment
below notwithstanding the verdict and in requiring a remission
of a part of the damages awarded by the jury in their verdict, for
the reason that by such action of the court below the defendant
below was deprived of a constitutional right, viz., its right to
a trial of the issues in the cause by a jury."

The facts, as disclosed by the record, are that the plaintiff,
David F. Haile, was 38 years old; as the result of a fall in
childhood he was injured, and his physical and mental develop-
ment were greatly retarded, his mind being that of a child.
The land was acquired by him under the homestead laws of the
United States; his father was with him when he "filed on it"
and saw to its cultivation, and after issuance of patent paid the
taxes. So far as the evidence shows plaintiff had transacted no
other business than that involved herein, except the conveyance
of a portion of his homestead to his sister, which was done under

the supervision and with the consent of his father. He had lived with his father some four miles from the small town of Mountain View, where defendant bank was located, since 1892, and had frequently visited there. The father, G. F. Haile, was appointed his guardian on April 23, 1910. He knew nothing of the transactions in question until shortly before his appointment, when he was informed thereof by a third person wholly disconnected therewith. Plaintiff could read printed matter, but was unable to write, even his own name. The notes and mortgages were signed by mark. The first was for $500 executed December 7, 1907, to one J. A. Hyndman; the second and third of date December 27, 1909, were made to the Oklahoma Farm Mortgage Company for $1,000 and $100, respectively. At the time of the execution of the first note and mortgage one Amon Haile, a brother of defendant, older than he, and who lived at Mountain View, was indebted to defendant; his indebtedness, which was past due, being secured by chattel mortgage. Defendant was pressing him for payment and suggested that he get assistance from some one; whereupon, Amon Haile brought his brother, the plaintiff, into the bank and introduced him to the president and an employee, who became its cashier prior to the execution of the last notes and mortgages. The bank officials referred Amon Haile and the plaintiff to a loan agent who officed in the rear of the bank; the loan was made, and the amount thereof, less expenses and commission, deposited in the bank and used in satisfaction of the obligation of Amon Haile to the defendant. When the last notes and mortgages were made Amon Haile was again indebted to the defendant. Its cashier arranged with the agent of the last mortgagee for the $1,000 loan. He (the cashier) signed plaintiff's name and took his acknowledgment to the instrument. With reference thereto he testified:

"Q. What did David F. Haile say to you when he told you to sign his name there? A. I asked him if that was his request; he nodded his head that it was. Q. You asked him if what was his request? A. For me to sign the papers. Q. He

hadn't said a word until that time? A. I don't recollect. Q. And you knew he didn't have intelligence at that time to transact and execute that? A. I don't remember. Q. You wouldn't say that he was an ordinary man, would you? A. His brother told me he did not write. Q. And therefore you says 'Is it your request that I sign for you?' A. Yes, sir. Q. And he didn't say anything, but just nodded his head; which way—the way you did then, or the other way? A. I wouldn't have signed it if it had been the other way."

This witness also testified as to the disposition of the proceeds of the last loan as follows:

"Q. I will ask you to examine the slip of paper marked Plaintiff's Exhibit A, and will ask you if you know what that slip is. A. I think I made this statement to Mr. Haile when he asked me concerning the matter. Q. From that statement of the disbursements of the proceeds of that loan? A. $596 paid Mr. J. A. Hyndman loan commission and interest; $17.53 paid taxes; $3.85 was release and recording fees; $5 for abstract, made a total of $622.38; there was a balance of $377.62, which made $1,000. Q. What became of the balance? A. $20 of it was cash paid to Amon Haile; $73.50 was paid by Amon Haile to Mr. T. E. Givens, who had a note of that amount; the remainder was paid by Amon Haile on the note."

A number of witnesses, all neighbors, were, in addition to his father, offered to prove the mental condition of plaintiff; and each, after testifying to long acquaintance and frequent conversations with him, was permitted to express an opinion as to his capacity to transact business.

Defendant urges that the judgment is not sustained by sufficient evidence. The established rule is that a judgment will not be reversed by this court on account of the insufficiency of the evidence, where the evidence reasonably tends to support the same. *Bank of Guymon v. Arnold*, 28 Okla. 49, 113 Pac. 719; *Great Western Mfg. Co. v. Davidson M. & E. Co.*, 26 Okla. 626, 110 Pac. 1096; *Hampton v. Culberson*, 29 Okla. 468, 118 Pac.

134; *Bank v. Moore,* 30 Okla. 148, 120 Pac. 1003; *Brash Cigar Co. v. Wilson,* 32 Okla. 153, 121 Pac. 223; *Galer v. Berrian,* 43 Okla. 303, 140 Pac. 155.

Defendant contends that there was error in the action of trial court in permitting nonexpert witnesses to express their opinions as to plaintiff's mental capacity to transact business, without having previously detailed the particular phenomena upon which such opinions were formed. All of these witnesses were neighbors, who for many years have lived near plaintiff, one having lived in the house with him for more than a year, and all having frequently seen and conversed with him at their homes, and in his own, and at various other places. Plaintiff while not a witness, was present at the trial. In Chamberlayne's Modern Law of Evidence, sec. 1912, it is said:

"So different are the forms and habits of observation in different persons, that it is difficult to generalize with regard to an administrative rule as to what shall furnish ground for admitting the inference. What shall be deemed to constitute a sufficient opportunity for observation is, however, stated by the Supreme Court of Indiana: 'It is * * * agreed by the authorities that if the witness shows an acquaintance with the accused, that he has had conversations with him, or that he has had business dealings or social intercourse with him, he may, having stated the facts, express an opinion.' Necessarily, the matter is mainly one of administration."

Speaking to this point, the Supreme Court of Connecticut in *Atwood v. Atwood,* 84 Conn. 169, 79 Atl. 59, 37 L. R. A. (N. S.) 591, said:

"An opinion of a nonexpert witness which does not rest upon facts stated by him, or is not acquired through the use of his senses, may not be laid in evidence. *Turner's Appeal,* 72 Conn. 305, 315, 44 Atl. 310. The witness may state the facts on which the opinion rests. He is not required to do so. He must show

Form 21

that he had the means and opportunity for knowledge. His opinion without this foundation is inadmissible. When, however, a subject is relevant to the matter in suit, and the lay witness has had the means and opportunity of acquiring knowledge of the subject through the use of his senses, and the impression or opinion is formed from constituent facts and conditions which are so numerous or so complicated as to be incapable of separation, or so evanescent in character they cannot be fully recollected or detailed, or described or reproduced so as to give the trier the impression they give the witness, or so as to enable the trier to draw a fair inference from such facts and conditions, he may be permitted to testify to the impression or conclusion obtained by him from them, leaving it to the cross-examination to develop the foundation for the impression or conclusion. *Spencer's Appeal,* 77 Conn. 638, 643, 60 Atl. 289; *Turner's Appeal,* 72 Conn. 305, 315, 44 Atl. 310; *Chamberlain v. Platt,* 68 Conn. 126, 130, 35 Atl. 780.

"The exceptional witness may be able at times to describe the eye or the action of a man; but he cannot convey distinctly to another the appearance of the man to him, unless he may give the impression made upon him, or the conclusion reached by him, from the man whom such acts and look portray: We cannot express in words the facts and conditions which lead us to the opinion that one is under the influence of haee or love, pain or pleasure, hope or fear. We cannot describe exactly our own emotions, sentiments, and affections, much less those of another. Memory may retain no single detail, indeed one may never have recognized a single detail; yet the appearance of the man may have left upon the mind an indelible impression as to his physical and mental condition. Clear before him is the picture of what he saw—a man healthy or sick, strong or fragile, well or poorly, changed in health for better or worse, composed or nervous, excited, or despondent, tired or exhilarated, intellectual or weak-minded, conscious or unconscious, suffering or happy. In truth, that which we call opinion is fact. The impression or conclusion is the sum of what he saw, and in its final analysis the offer is to prove a fact and not an opinion. 3 Wigmore, Ev. 1918; *Turner's Appeal,* 72 Conn. 305, 315, 44 Atl. 310."

In Rogers on Expert Testimony, page 160, it is said:

"It must be conceded, we think, that the interests of justice require that ordinary witnesses should be allowed to express an opinion as to soundness of mind based on their personal knowledge and observation of the party's acts. The inquiry does not seem to be one so necessarily involving scientific evidence as to be beyond the domain of common sense. And it is quite possible for nonprofessional witnesses to observe innumerable acts, motions and expressions, which it is impossible to communicate to others in such a way as to convey any fair conception of their importance, and which are, nevertheless, sufficient to conclusively satisfy the observer as to a person's mental condition. While such opinions are admissible, yet no general rule can be laid down as to what shall be deemed a sufficient opportunity of observation in the witness, other than it has enabled him to form a belief or judgment thereon."

Without attempting to announce a general rule in this regard, we hold that in the instant case the admission of the evidence complained of did not constitute prejudicial error.

When the indebtedness of plaintiff's brother was satisfied out of the money obtained by virtue of the notes and mortgages referred to defendant surrendered to the brother certain securities; and it contends that plaintiff having neither restored nor offered to restore such securities was not entitled to prevail in this action.

In this jurisdiction the contract of a person of unsound mind, but not entirely without understanding, made before his incapacity is judicially determined, is not void, but voidable only, and subject to rescission under the provisions of section 986, R. L. 1910 (section 1137, Comp. L. 1909). The verdict was a general one for plaintiff, and therefore a finding upon every issue in his favor. The evidence is persuasive that throughout the transactions involved there was an absence of good faith on the part of the officers of defendant. Plaintiff's physical and mental condition were obvious. The cashier of defendant, concerning his knowledge in this regard at the time he signed the name of plaintiff to the notes and mortgages, when asked, "And

you knew he didn't have intelligence at that time to execute and transact that," could say only, "I don't remember." And again he swears that plaintiff did not receive the proceeds of the loan. Every dollar of the money, save $73.50, paid to one Givens, was used to satisfy the obligations of the brother of plaintiff to the bank. When the loans were made it was the purpose of defendant's officers to apply the money in payment of Amon Haile's debts. And aware of the helpless condition of plaintiff, they knew he was deriving no benefit of the transaction, but on the other hand was unwittingly incumbering his land and incurring obligations which he had no means of ever meeting, all for the bank's profit. The contention that he must return the security surrendered by the bank to his brother will not avail defendant. The law does not contemplate in any case that one shall restore that which he did not receive.

Again, it is urged that the judgment should be reversed for the reason that the verdict was excessive and the result of passion and prejudice, and further that the court erred in requiring the remittitur and then rendering judgment. There is nothing in the record to indicate either passion or prejudice on the part of the jury, while a review of the whole case inclines us to the opinion that if there was error in the action of the court in directing the remittitur, it was to the prejudice of the rights of plaintiff, and defendant has no ground of complaint on account thereof.

We have examined the charge of the court, and in our opinion, taken as a whole, it fairly states the law applicable to this case. There was no error in the refusal to give the instructions requested by defendant.

The judgment should be affirmed.

By the Court: It is so ordered.