### BLASDEL et al. v. GOWER.

No. 7896—Opinion Filed May 28, 1918.

Rehearing Denied June 25, 1918.

(173 Pac. 644.)

1. **Conspiracy — Acts of Conspirator — Effect as to Coconspirator.**

When a conspiracy is shown to have existed for the accomplishment of an object, each of the conspirators participating in such conspiracy are responsible for the acts of any one of said conspirators done in furtherance of such conspiracy.

2. **Appeal and Error — Question of Fact—Review.**

Where the evidence is in conflict and there is competent evidence and inferences that may be drawn therefrom to reasonably sustain the verdict rendered, and the verdict rendered has the affirmative approval of the trial court, this court will not disturb the verdict.

3. **Fraud — Exemplary Damages—Statute.**

Exemplary damages may be recovered in addition to actual damages, where the competent evidence reasonably shows that the tort complained of was perpetrated by actual, willful fraud, practiced to obtain ownership of personal property.

4. **Actual and Exemplary Damages—Conspiracy—Evidence.**

The evidence in this case carefully considered, and, though in conflict, held to reasonably sustain the judgment rendered for actual, and also for exemplary, damages.

(Syllabus by Collier, C.)

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by T. E. Gower against John F.

Blasdel, Robert Chalfant, and others. Judgment for plaintiff, and the named defendants bring error. Affirmed.

H. J. Sturgis, for plaintiffs in error.

H. G. McKeever and F. L. Brimi, for defendant in error

Opinion by COLLIER, C. This action was commenced by the defendant in error, hereinafter styled plaintiff, against John F. Blasdel, Robert Chalfant, H. H. Thomas, and J. M. Ray, to recover $400 actual damages and $1,000 exemplary damages for fraud and deceit of the defendants in acquiring from the plaintiff a team of horses. There was judgment for plaintiff against all of said defendants, but only John F. Blasdel and Robert Chalfant appeal to this court, and will hereinafter be styled defendants, but all of said defendants are made parties to said appeal. The petition in this case is as follows:

"That on or about the 29th day of August, 1914, this plaintiff came to Enid, Okla., en route from the state of Arkansas to his home in Colorado, driving a team of horses hitched to a wagon, which team of horses were at that time of the value of $500. That accompanying this plaintiff was his wife and baby, and on account of the indisposition of his said wife and baby he decided to sell his team of horses and wagon and harness and to proceed on his journey to Colorado by taking the train. That thereafter, on or about the 5th day of September, 1914, the plaintiff, not having yet disposed of said property, was standing on the streets of Enid with his team and wagon, and the defendant Bob Chalfant voluntarily came to said wagon and got upon the wagon with this plaintiff and told him he had a man that would buy his property, and then the defendant John Blasdel came and got up on the wagon also, who is a partner of the defendant Bob Chalfant, engaged in purchasing horses in the city of Enid, and that the said defendants Bob Chalfant and John Blasdel directed this plaintiff to go to the defendant H. H. Thomas; that the said H. H. Thomas desired to purchase the team of this plaintiff. Thereupon the said defendant Bob Chalfant got down from the wagon and went and found the defendant H. H. Thomas, and brought him to this plaintiff as a prospective purchaser for said team of horses, while the said defendant John Blasdel remained on the wagon in conversation with the plaintiff. Upon producing the defendant H. H. Thomas, and presenting him to this plaintiff the defendant, Bob Chalfant left the wagon and went away, and the defendants John Blasdel and H. H. Thomas remained, and thereupon the defendant Thomas produced a certain note and mortgage signed by one J. M. Ray, the mortgage covering a lot in the town of Carmen, in Alfalfa county, Okla., which the said Thomas

offered as a part consideration for said team of horses. Thereupon this plaintiff asked the said Blasdel if the note and mortgage was good, and the said defendant John Blasdel represented to this plaintiff that he believed said note and mortgage was good, and the said defendant H. H. Thomas represented to this plaintiff that the note and mortgage was good; that the same was given by the said J. M. Ray upon the said lot in the town of Carmen, Okla., which the said defendant Thomas had sold to the defendant Ray, and that the note and mortgage represented the balance of the purchase price of said lot, conveying to this plaintiff thereby, and that the plaintiff should believe that the said lot was of a greater value than $400. That the defendants John Blasdel and H. H. Thomas drove with this plaintiff in his wagon about the city of Enid to try out the team, and upon driving a ways the said Thomas agreed to take the team if this plaintiff would accept as part payment the said note and mortgage of the defendant J. M. Ray.

"At this stage of the proceeding the defendant John Blasdel got out of the wagon and left this plaintiff and H. H. Thomas to go to the home of the defendant J. M. Ray, at the request of H. H. Thomas, and thereupon this plaintiff and the defendant H. H. Thomas went to the home of J. M. Ray in the northwest part of Enid, and after the said H. H. Thomas went into the house and conferred with J. M. Ray, they came out of the house, and in the presence of this plaintiff, the defendant Thomas asked the defendant Ray when he could take up said note, which did not fall due until the 10th day of December, 1914, whereupon the said Ray replied that he could take up said note now, but it would run him a little short, but would take it up on the 15th day of September, 1914, and the said H. H. Thomas represented to this plaintiff that the lot on which the mortgage was given was a fine piece of property in the business part of town in the town of Carmen, and that the note was perfectly good, and that the said J. M. Ray was as good as gold; that the said J. M. Ray was working for the Frisco Railroad Company and drawing a salary of $200 per month. That the plaintiff still refused to make said trade on account of the date on which said note was to be paid, and the said Ray agreed to pay the same on the 15th day of September, 1914, providing the same would be discounted $20, and this plaintiff still refused to accept, but thereupon the defendant Thomas agreed to pay one-half of said discount, and the plaintiff still refused to make the trade or the deal, and thereupon the said Thomas agreed to pay the entire discount, providing plaintiff would throw the horses' collars in with the team. Thereupon this plaintiff, believing all of the representations heretofore related and made to him, and relying on the same to be true, all of which made by either of the defendants above named were false and made for

the purpose of cheating and defrauding this plaintiff and with the knowledge on the part of each of the defendants that they were false, and knowing that this plaintiff was relying upon the truth thereof and acting thereon, this plaintiff did act thereon and exchanged his said team of horses for $100 in cash and the said note and mortgage of the said J. M. Ray, which note was of the face value of $400. Thereupon, to further carry into effect the fraud and deceit perpetrated upon the plaintiff by each of the defendants, the defendant H. H. Thomas, in order to consummate said deal, agreed and did pay to this plaintiff the sum of $20 in addition to the $100 above mentioned, for the purpose of saving him any loss on the discount of said Ray note.

"This plaintiff states further that he is like a certain man who went down from Jerusalem to Jericho and fell among thieves, and that each of said defendants, acting conjointly and conspiring and confederating together for the purpose of cheating and defrauding this plaintiff, did conspire and confederate together, and did cheat and defraud this plaintiff, by reason of the said false and fraudulent representations as above set forth, out of the said team of horses, and to the damage of this plaintiff, in the sum of $400.

Plaintiff states further that the said note and mortgage are worthless; that the lot in Carmen, on which security was given, is without value; that the said J. M. Ray is insolvent and worthless and his obligation is absolutely without value, all of which was well known to the defendants and each of them at the time they conspired together to cheat and defraud this plaintiff, and that said concocted worthless note and mortgage was gotten up for the specific and sole purpose, by the defendants conspiring together, to cheat and defraud this plaintiff, and that the defendants and each of them knew that said note and mortgage was worthless at the time same was executed, made, and delivered to this plaintiff. That upon the said defendant H. H. Thomas procuring possession of said team of horses he immediately delivered the same to the defendants John Blasdel and Bob Chalfant, and that they disposed of them before the payment came due on the 15th day of September, and before the said plaintiff learned that the said note and mortgage was worthless, and had discovered that a cheat and fraud had been perpetrated upon him by said defendants, and which disposition of said team was made for the purpose of carrying into effect the design and conspiracy of the said defendants, and each of them were all beneficiaries of the fraud perpetrated upon this plaintiff.

"The plaintiff states further that by reason of the fraud and deceit perpetrated upon him by reason of the conspiracy entered into by the said defendants to cheat and defraud him, and on account of the fraud, malice, and oppression practiced thereby,

this plaintiff is entitled to recover exemplary damages against the defendants and each of them by way of punishment in the sum of $1,000 and a judgment further for his costs herein expended, making a total on which plaintiff should recover judgment against the defendants in the sum of $1,400 and for costs of suit.

"Wherefore plaintiff prays judgment against the defendants and each of them in the sum of $400 actual damages and $1,000 exemplary damages and for costs herein."

The defendants demurred to the petition, which demurrer was overruled and excepted to. Thereupon the defendants filed an answer, denying each and every allegation to the petition.

The case was tried to a jury and resulted in a verdict for the plaintiff for $400 actual damages and $425 exemplary damages, to which the appealing defendants duly excepted. The appealing defendants timely moved for a new trial, which was overruled, excepted to, and error brought to this court.

There are no assignments of error in the brief, and the only errors therein insisted upon are: (1) That the court erred in overruling the demurrer to the petition; (2) that the verdict is not sustained by the evidence; (3) that the verdict is the result of passion and prejudice; (4) that the action of the court in overruling the motion for new trial was error.

We are of the opinion that the court did not err in overruling the demurrer to the petition, as the petition sufficiently states a conspiracy on the part of all the defendants to wrong the plaintiff, clearly sets up the carrying into effect of the conspiracy and the resulting damage to the plaintiff.

"It is not error to overrule a demurrer" to the petition "where the allegations to the petition, construed most favorably to the pleader, set up a cause of action." Henry v. Gulf Coast Drilling Co., 56 Okla. 604, 156 Pac. 321.

We have carefully considered the evidence in this case, and are of the opinion that, though in conflict, there is sufficient evidence reasonably establishing that a conspiracy was entered into on the part of all of the defendants to defraud the plaintiff, and to sustain all of the other material allegations of the petition, and that therefore the insistence of the appealing defendants that the verdict is not sustained by the evidence is without merit.

Where a conspiracy has been established by competent evidence, each of the parties to such conspiracy is responsible for the acts of every one of said conspirators done in the furtherance of such conspiracy, and

hence, though the appealing defendants may not have actually participated in the overt acts that resulted in the fraudulent acquisition of the team, being coconspirators, they are equally liable for the wrong done the defendants by the active actors in the conspiracy.

"When a conspiracy is entered into to cheat and defraud any person of any property, all persons when engaged therein are responsible for all that is done in pursuance thereof by any of their conspirators until the object for which the conspiracy was entered into is fully accomplished." Grayson v. State, 12 Okla. Cr. 226, 154 Pac. 334.

"Where controverted questions of fact are submitted to a jury and the evidence reasonably tends to support the verdict, the appellate court will not disturb the verdict." Hodgins v. Noyes, 42 Okla. 542. 141 Pac. 968.

"Where there is any evidence reasonably tending to support the verdict of the jury, the same will not be disturbed on appeal." Smith v. Bell, 44 Okla. 370, 144 Pac. 1058; Farmers' & Merchants' Bank of Mountain View v. Haile, 46 Okla. 636, 149 Pac. 214.

It is earnestly insisted by the defendants that as evidence that the verdict was predicated upon prejudice and passion is the fact that the action is brought to recover $400 actual damages, while the jury have awarded $425 actual damages, and a considerable part of the brief of the defendant is devoted to arguing this contention. An examination of the record shows that said contention is not well founded, as the jury awarded a verdict for actual damages in the sum of $400. Section 2851, Revised Laws 1910, provides:

'In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

Western Union Telegraph Co. v Reeves, 34 Okla. 468, 126 Pac. 216, it is held:

"To authorize a judgment for exemplary damages in an action sounding in tort, the proof must show some element of fraud, malice, or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence, such disregard of another's right, as is deemed equivalent to such intent."

The jury having found by their verdict in favor of the plaintiff herein, such finding is a necessary finding that said conspirators were guilty of fraud in securing the property which is the subject-matter of this action, and under the statute above quoted

were justified in rendering a verdict for exemplary damages, and in so doing we are of the opinion they were fully justified.

In Hobbs v. Smith et al., 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697, it is said:

"It was" the duty of the court "after the jury had returned its verdict, where the justness of the same was challenged, to carefully weigh the entire matter; and, unless he was satisfied that the verdict was responsive to the demands of justice, to set the same aside and grant a new trial, and that, unless the conclusion reached by the jury met the affirmative, considerate approval of the conscience and mind of the court, it should not, when challenged, be permitted to stand. We must assume in this case that on the presentation of the motion for new trial this duty was performed by the learned trial judge who presided. So that the verdict determining the facts and awarding judgment in this case comes to us with the conscientious sanction and approval of the trial court. It is the duty of the trial court to be satisfied that no injustice has been done, and, if not satisfied on this point, he should set the verdict aside and grant a new trial. But, in order for this court to set aside the verdict, it must be made affirmatively to appear that injustice has been done."

Applying the above rule to the motion of the appellants for a new trial, we feel, and so hold, that the court did not err in denying the said motion.

The judgment is affirmed.

By the Court: It is so ordered.