## CONLEY v. JONES.

No. 10009—Opinion Filed Jan. 25, 1921.

Rehearing Denied Feb. 23, 1921.

(Syllabus by the Court.)

**Appeal and Error—Review—Questions of Fact—Verdict.**

In a civil action, triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by Richard M. Jones, by Mrs. Florence Mathews, his next friend, against Charles Conley for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

R. B. Thompson and Smith & Walker, for plaintiff in error.

McDougal, Lytle, Allen & Pryor, for defendant in error.

JOHNSON, J. This is an appeal from the district court of Creek county, Hon Ernest B. Hughes, Judge.

On the 14th day of March, 1917, Richard M. Jones, by Mrs. Florence Mathews, his mother and next friend, commenced this action in the district court against the defendant, Charles Conley, to recover compensation for personal injuries, which cause was tried to the court and jury and resulted in a verdict and judgment in favor of plaintiff in the sum of $1,500, to reverse which this proceeding in error was regularly commenced by the defendant in this court on June 7, 1918, by writ of error with case-made attached.

The essential allegations of the plaintiff's petition follow:

"That on or about the 6th day of May, 1916, in the city of Sapulpa, in Creek county, Oklahoma, plaintiff was traveling on Lee avenue, a public thoroughfare of said city, riding a bicycle. That he was traveling west on the right-hand side of said street, and observing the law of the road and riding in a careful, prudent manner, and at a slow rate of speed; that the defendant was driving east on said street and according to public custom and the law of the road he should have kept on the right-hand side of said street. But in violation of universal custom and of the law of the road of the ordinances of the city of Sapulpa, defendant

crossed the street from the right side to the left-hand side of said street, and while driving at a fast, reckless, unlawful and dangerous rate of speed, defendant ran his automobile with great force and violence against plaintiff, thereby knocking plaintiff from his bicycle to the ground, breaking plaintiff's arm and otherwise wounding, bruising, maiming and injuring plaintiff, thereby causing plaintiff to suffer great bodily pain and to incur great expense for nursing and medical attention and causing plaintiff to be totally disabled, and confined to his bed for a period of ―― days, and inflicting permanent injuries and disabilities upon plaintiff."

The defendant's answer consisted of a general denial and a charge of contributory negligence on the part of the plaintiff. The allegation of contributory negligence is as follows:

"And the defendant further answering alleges that any injuries sustained or suffered by the plaintiff at the time or on the occasion in the complaint referred to, were caused in whole or part, or were contributed to by the neglect and want of care of the said plaintiff and not by the negligence or want of care on the part of this defendant."

The defendant assigns 16 specifications of error, concerning which counsel say in their brief:

"On examination of the record and the assignment of errors, we deem assignments 1 to 4 and 13 to 15, inclusive, material and kindred in character and capable of being argued together, and will so treat them, and doubting the efficacy of the others, they are, therefore, waived.

"The evidence in this case, to our mind, proves, first, that the defendant was not primarily negligent.

"Secondly, that if defendant's car was on the wrong side of the street, proceeding north or turned north, at the time of the collision, according to the theory of the plaintiff, it was better for him that it was so, for proceeding on his wheel toward defendant's car, looking down, as plaintiff says he was, it gave him greater distance, longer time and better opportunity to look up and see the car and avert striking it, than if the car had been on the opposite side or in the middle of Elm street, and this being the sole negligence of the defendant, if such it be, that has been shown by the plaintiff, it cannot avail him anything, for under the circumstances of the case, such position of defendant's car and such negligence as it might be, was not and cannot be considered the direct and proximate cause of the collision and resultant injury to plaintiff.

"Thirdly, the plaintiff, according to all of the evidence, was flagrant in his disregard for his own safety, and it was his reckless fast riding down grade, and never looking up or where he was going, for over a half a block, approaching, as he was, a street crossing, that caused the accident and consequent injury to plaintiff."

The foregoing contains the only proposition and the argument in support of same presented by counsel in their brief, as well as in the oral argument. They seek to stress more strongly the proposition that the evidence failed to prove primary negligence on the part of the defendant.

The undisputed evidence discloses that Lee avenue runs east and west and Elm street runs north and south, and that the injury complained of was received at the intersection of said streets; that the plaintiff, who was a lad about 12 years of age, was riding a bicycle traveling west, and that he continued near the curb of the north side of Lee street, crossing Elm, and that his bicycle struck the rear fender of the defendant's automobile back of the end of the running board; that plaintiff's injuries consisted of a broken arm between the shoulder and elbow and he was otherwise bruised and was confined in a hospital for several weeks, and when the cast was removed from his arm it was discovered that the bones had failed to unite, and he was again sent to another hospital, where an operation was had, and the bones of the arm, which were split and shattered, were united and bound together by a silver plate, and he remained in that hospital for some time, and at the time of the trial he testified his arm continued to give him pain at times and was weaker than the other arm.

His injuries are not denied, however, and no claim is urged in the brief of counsel that the amount of the verdict is excessive. It was also shown without dispute that the avenue for some distance east of where the injury occurred, and in the direction the plaintiff was traveling on his bicycle, was down a heavy grade; that both streets were paved and curbed; that the defendant was driving his automobile coming from the west on the south side of Lee street, until, a short distance before reaching Elm street, he overtook a wagon and he turned to the left to go around the same, and that he had three passengers in his car conveying them to the depot. As to the position of his automobile from the time he turned to the left to pass the wagon, the evidence is sharply in conflict. The most direct testimony given by any eyewitness was that of Mrs. S. S. Phillips, who testified as follows:

"Q. Where do you reside, Mrs. Phillips? A. I reside at present at 601 East Dewey. Q. On or about the 6th day of May, 1916, where did you reside? A. 102 South Elm,

right down here on the corner (indicating). Q. On or about the date mentioned, did you see an accident from that corner? A. Yes, sir. Q. Are you acquainted with this young man, Richard Jones? A. Well, I never saw him before until I saw him at the time of the accident. Q. You saw him there on that occasion? A. Yes, sir. Q. Now, just tell' the jury what you saw on that occasion. A. Well, I was sitting on the porch, the north-west—northeast corner of the porch, and this boy, as well as I could tell, he was coming down, just turning the corner on the southwest corner there of the street, next to the courthouse here, and this automobile came along. I didn't know who the party in the automobile was; I didn't pay much attention, but I noticed the boy was coming on a bicycle and he was looking down; it seemed as though on the ground, or his bicycle or something, when this automobile struck him. Q. Now, which way was the automobile going? A. Well, from what I could see or observe of it, it was turning the corner to go north. Q. Now, where is your home with reference to Lee and Elm? A. It is on the east side of the street; it is on the south side of Lee, right on the corner, on the west side of Elm, south Elm, it was right on the corner. Q. And you were sitting on your front porch. A. Yes, sir; I was right on the corner of the porch there. Q. Now, where was the automobile when it struck the boy on the bicycle? A. Well, the automobile, from what I can judge, was just—well, it was so close to the boy that he couldn't turn the corner without running into the bicycle. Q. The automobile was going which direction at that time? A. It was turning the corner to go north. Q. Turning the corner to go north? A. Yes, sir; to go north. Q. And next to what curb was it, the north curb or the—I mean the east curb or the west curb on Elm street? A. Why, it was the west curb, right next to the corner of the courthouse. Q. Right next to the corner on the courthouse side? A. Yes, sir; the east curb. Q. What happened when the collision occurred? A. When the collision occurred the bicycle broke to pieces and the boy fell to the ground. Q. Did you go over there? A. Yes, sir. Q. Well, what happened then? A. Well, they picked the boy up; some of the men picked him up; of course a crowd began to gather then and quite a good deal of excitement, like there always is; the boy was crying and wanted them to set him down on the car, and the little boy told his name, and I says, 'Where do you live, son?' and he says, 'At the New National.' and so by that time these men says, 'Oh, son, you are just scared.' Q. Who said that? Mr. Thompson: We object to that as incompetent, irrelevant, and immaterial. The Court: Overruled. Mr. Thompson: Defendant excepts. Q. Who said that? A. I am not acquainted with the party, but the one that was in the automobile said that. Q. Was it this man sitting right there (indicating). A, I think so. Q. Did he have hold of the boy's arms at the time. A. Well, now, I couldn't say that he had hold of the boy's arms, but some man, some other man was with him, and they said: 'Boy, you are just scared.' He says: 'You go home and you will be all right.' Q. And what did they do then? A. Well, it seems as though then they got in their car and went away. Q. What happened to the boy? A. Well, Mr. Buffington came in his car and took the boy away. By Mr. Lytle: That is all.

### Cross-Examination.

"By Mr. Thompson: Q. Mr. Buffington came before the parties in the automobile that struck the bicycle left, didn't he? A. I could not say whether he did or not. Q. Will you say he did not? A. I don't know, but I believe he came up just about the same time these men were leaving. A. Did you see this automobile before the boy rode his bicycle into it? A. Yes, sir. Q. How long before? A. Oh, just a minute or two; I suppose hardly that; just a second. Q. Where was the automobile when you first saw it, on Lee or Elm? A. It was on Lee. Q. Now, which side of Lee? A. Well, it was on this side (indicating). Q. The north side? A. Yes, sir. Q. Was it north of the center of Lee avenue? A. Well, it was along just about the center of the side or somewhere along there, when I noticed them. Q. Would you say it was north or south of the center from your best judgment? A. From my best judgment, I suppose it was nearer on this side than it was on the other side. Q. That is your best judgment? A. Yes, sir. Q. The car turned off of Lee avenue and headed on Elm street when the boy rode his bicycle into it? A. It was just turning. Q. Just turning? A. Yes, sir. Q. And how near was it to the center of Elm street when the boy struck the car with his bicycle? A. It was—I don't know as I could tell you just how near. Q. Give the jury your best judgment. A. Well, it was so close to the curb that there wasn't room for him to pass between the curb and the boy without running into the boy; if you know how wide an automobile is, you know how far he was away. Q. There wasn't room enough for what? A. There wasn't room enough to go in between the curb and the boy without striking the boy. Q. Did the automobile strike the boy? A. It certainly did, the fender did. Q. Which one, the front or the back one? A. The front one, as near as I could tell. Q. I don't want to know as near as you could tell; I want to know what you did see. A. That is what I saw. Q. Did it knock the boy down in front of the machine? A. No, sir; it wasn't in front; he was by the side of the machine. Q. Isn't it a fact that the boy rode his bicycle right into that machine at right angles? A. No, sir; he didn't ride it right into the machine; they rode into him. Q. Which one of those boys struck it, the one headed west? A. There wasn't no other boys there. Q. You just saw this

one? A. There wasn't no other boy there. Q. Where? A. At the time of the accident. Q. How long had you seen this boy before he struck the automobile? A. I seen him just about the time I seen the automobile. Q. About the same time? A. Yes, sir. Q. Then you just saw them just as they collided? A. I seen them just as they ran together, as they ran into the boy. Q. That automobile was headed directly north? A. Well, it was turning north. Q. Was there any portion of the automobie off of the intersection of Lee and on Elm street? A. Well, I would judge about half of the car. Q. About half of the car? A. Yes, sir. Q. You may stand aside.

### Re-Direct Examination.

"By Mr. Lytle:

"Q. At the time of the accident or immediately before, did you hear the automobile give any signal? A. No, sir. Q. About how far were you from the scene of the accident? A. Well, now, of course, if I was down there, I could show you just exactly where it happened. Q. Can you estimate it? A. Well, it was across the street and across the curb there, the sidewalk, on my porch; I would judge it wasn't over 35 or 40 feet, somewhere along there. Q. That house sits almost on the street, doesn't it, Mrs. Phillips? A. Yes, sir; it sits out, the porch comes out. Q. Almost even with the sidewalk? A. Well, no; I would judge there was about a foot and a half. Q. And then there was the sidewalk and the street? A. Yes, sir. Q. There was the width of the street and the width of the sidewalk and the curb between you and the accident? A. Yes, sir. Q. Would you estimate that as being forty or fifty feet? A. Well, now, the sidewalk is, I think they call it six feet. Q. Is your hearing good, Mrs. Phillips? A. Oh, yes, sir."

This testimony was corroborated by the plaintiff and other witnesses. The plaintiff testified that he had his eyes on the front wheel of the bicycle until within five feet of the automobile, when he raised his head and discovered he was too close to it to avoid striking. The defendant testified that he first saw the boy coming some 300 or 400 feet east of him, and that he was looking back at other boys going down a hill behind him; that he, the defendant, honked the horn on his automobile; that he turned around a wagon, and crossed Elm street south of the center, but near the east side of same, he turned north on Elm street. One of the passengers in his car testified that when the bicycle struck the automobile, the automobile was far enough west of the center of Elm street for cars to pass between it and the west curb, and at the time it was struck was across the line of the north curb of Lee avenue and such line, where it struck the car about the rear end of the running

board. No further discussion of the evidence of this case except to say that the same was in conflict as to the actions of plaintiff and defendant immediately before the accident. The court charged the jury upon the questions of primary negligence of the defendant and contributory negligence of the plaintiff. No complaint is made by the defendant as to the instructions of the court. On examination of the instructions we find that the same clearly and correctly stated the law to the jury in every respect. The defendant did not demur to the evidence nor move for an instructed verdict.

In these circumstances it is clear to us that this case comes clearly within the rule that has been universally adhered to by this court—"In a civil action, triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal." McCoy v. Wosika, 75 Okla. 3; Bunker v. Harding et al., 70 Oklahoma, 174 Pac. 749; Blasdel et al. v. Gower, 70 Oklahoma, 173 Pac. 644; Shawnee National Bank v. Pool, 66 Oklahoma, 167 Pac. 994; Chicago, R. I. & P. R. Co. v. Pruitt, 67 Oklahoma, 170 Pac. 1143.

The judgment of the trial court is affirmed.

HARRISON, C. J., and KANE, MILLER, and KENNAMER, JJ., concur.