## DOLLAR DOWN FURN. CO. et al. v. BLASSINGAME.

No. 20895. Opinion Filed May 17, 1932.

Jno. L. Hodge and Thos. Norman, for plaintiffs in error.

Sigler & Jackson, for defendant in error.

KORNEGAY, J. This is a proceeding in error to review the action of the lower court in rendering a judgment against the plaintiff in error, based on a prosecution of a criminal case for the disposal of mortgaged property, as stated in the warrant for arrest, while the complaint charged the defendant with disposing of property on a conditional sale contract.

The petition was filed on February 16, 1928, and asked for $45.52 actual outlay in the way of railroad fare and attorney fees and loss of time, and asked for $2,500 additional for actual damages, and $2,500 punitive damages. There was an allegation of being imprisoned on a complaint caused to be filed by the plaintiff before D. W. Butcher, justice of the peace of Ardmore township, charging him with the disposal of mortgaged property, and that a warrant was issued and the cause dismissed on the 18th of February, 1927, with allegations that the defendant had consulted the county attorney, and the assistant county attorney of Carter county prior to filing the complaint, and that the assistant county attorney told him that there was no cause to issue the warrant, and refused to do so.

The statement was made that plaintiff was in the employ of the Ada & Atoka Railroad Company and was earning $125 a month when the warrant was issued, and that by reason of the issuance of the warrant and arrest, he had lost his position with the railroad company and was unable to find any other employment, and on that account he was injured in the sum of $2,500, and the further statement was made that he was entitled to $2,500 punitive damages.

A request was made by defendants to require him to number his causes of action, but the court overruled it. A demurrer was filed to the petition and was overruled, followed by an answer relying on the demurrer, and denying any responsibility for any damage or inconvenience to the plaintiff, and denying any damages, and setting up the fact that plaintiff had given a chattel mortgage to the defendants to secure an indebtedness and had disposed of the property without the consent of the defendants, and had left Carter county, and the defendants were not able to locate him at first, but finally located him and wrote him several letters but could not hear from him, and that upon learning that the plaintiff had disposed of the mortgaged property and had moved it from the county and placed it beyond the reach of the defendants, the defendants sent H. M. Barker to take up the matter with the county attorney of Carter county, with instructions to act upon the advice of the county attorney, and that the county attorney, being advised in the matter, advised the filing of a criminal complaint before D. W. Butcher, justice of the peace, and the said Butcher drew up a complaint and it was verified by Carl Holden, deputy sheriff, and from that time on the matter

was in the hands of the officers of Carter county and the defendant had nothing more to do with it. A reply was made in the form of a general denial, and the county attorney and assistant, and deputy sheriff who verified the complaint, and the justice of the peace who issued the warrant, and the agent of plaintiff in error, and the plaintiff below and his wife and mother and father, and the plaintiff in error were witnesses, each giving his version of the matter.

The deposition of Carl Holden, taken at Mineral Wells, Tex., on the 23rd of May, 1929, by plaintiff below, was read by the plaintiff's attorney, and the witness stated that he got the information when he swore to the complaint by H. M. Barker coming in the office and saying that Mr. Blassingame had sold some mortgaged property of Mr. Golden's, and wanting to know what he could do about it. That he did not talk to Mr. Golden about it. That he had no other information besides what Barker had given him. That he was present when the complaint was dismissed, and it was done at the instance of the assistant county attorney. Being cross-examined by Thos. Norman, attorney for the defendant, he stated that the county attorney was consulted about filing the case before the complaint was filed, and:

"He told me and Barker to go down before D. W. Butcher, justice of the peace, and get a warrant for him and he would prepare a proper complaint by the time I placed him in jail, on or before a preliminary hearing."

On recross-examination, he testified as follows:

"Q. Mr. Holden, other than the statement made by Blassingame to you, which you have heretofore related, did Blassingame make any other statement or admissions to you? A. He talked to me all the way down from Oklahoma City about the case. Q. During the course of this conversation did he recognize and admit that he had been guilty of disposing of mortgaged property? A. He told me that he had sold the furniture."

A demurrer was interposed to the evidence and overruled and exceptions taken, and H. M. Barker was called as a witness on behalf of the defendant, and stated his connection with the defendant and his effort to collect the debt, and that he and Carl Holden were directed by the county attorney to file complaint before the justice of the peace.

The court charged the jury and gave. in substance, the allegations of the pleadings. The second instruction was that the burden was upon the plaintiff to establish each and every material allegation contained in the petition by a fair preponderance of the testimony. The third, fourth, fifth, sixth, and seventh instructions are as follows:

"(3) You are instructed in this case that if you should find that the action was filed by the defendant without any probable cause before the justice of the peace, then that malice is presumed and you would be justified in presuming that said defendant acted with malice and would therefore be liable to the plaintiff for any damages that he suffered by reason of the institution of said action.

"Excepted to by defendants and exceptions allowed.

"(4) You are told that if you find that the defendant was instrumental in bringing about the filing of the criminal action, then he would be responsible therefor, regardless of who actually signed the complaint, and therefore you are told that if Carl Holden, a deputy sheriff, filed the complaint at the suggestion and request of the defendant, or any person acting for or on behalf of the said defendant, then the defendant would be liable for said prosecution, and if the same was instituted without proper cause and through malice as hereinabove defined, then the defendant would be liable therefor.

"Excepted to by defendants, and exception allowed.

"(5) You are told that before a prosecution can be instituted in the courts of this state the county attorney must indorse upon the complaint the statement that he had examined the facts and recommend that a warrant issue, or in lieu thereof, the person issuing said warrant must make a bond to secure the cost of said prosecution, and you are told any prosecution issued without compliance with the law of this state, as above stated, is unlawful, and the person causing the prosecution to be instituted without complying with said statute would be responsible to any person injured thereby and that said criminal prosecution so instituted would be absolutely null and void.

"Excepted to by defendants, and exception allowed.

"(6) You are told that if the defendant in this case, or his agents, servants and employees, consulted the county attorney and the county attorney refused to institute said criminal prosecution, and the said defendant thereafter instituted the same without executing the bond as above stated, that said prosecution would be wrongfully instituted and the defendant herein would become liable to the plaintiff and be responsible for any damages he might suffer thereby.

"Excepted to by defendants, and exceptions allowed.

"(7) You are told that if the defendant,

or his agents and servants consulted the county attorney and were advised by the county attorney or his assistant, that the facts did not warrant a prosecution against the plaintiff, and regardless of the fact that said defendant, or his agents, servants or employee instituted said prosecution, then said prosecution would be wrongful and that the defendant would be liable for the damage caused thereby.

"Excepted to by defendants, and exception allowed."

The ninth instruction is as follows:

"(9) You are therefore told that if you should find from all the evidence, facts, and circumstances admitted for your consideration in this case, and by a fair preponderance thereof, that the plaintiff had resided in Carter county, Okla., as he alleges, that he had a good reputation, that he was employed by the railroad company, and that as a result of a wrongful or malicious prosecution instituted by the defendant, he lost his employment, and you further find that the defendant caused a wrongful and unlawful warrant to be issued for the arrest of the plaintiff, and the plaintiff was arrested and imprisoned, and by reason thereof he lost his job and suffered pain, mental anguish and humility, and that he expended money in his defense, you are then told it would be your duty to return a verdict for the plaintiff and fix the amount of his recovery in any sum that he has actually suffered in this case, as shown by the evidence, that is, any money that he has lost by reason of said malicious prosecution, if you find that same was malicious, and in addition thereto you may next consider as to whether or not you will return exemplary damages in this case, and in this connection you are instructed that before you would be justified in returning exemplary damages you would have to find that some damages had been suffered by the plaintiff wrongfully by reason of the acts of the defendants, and if he has so suffered such damages, actual damages, then you would be at liberty to assess punitive damages in any sum you think would be proper under all the facts and circumstances in the case at not to exceed the sum of $2,500, the amount sued for.

"If, on the other hand, you find that the defendant was acting upon the advice of the county attorney of Carter county, Okla., and that he had probable cause to believe and honestly did believe that the plaintiff was guilty of a violation of the law in regard to disposing of the property in question, and that in pursuance to the advice of the county attorney caused the prosecution to be filed and instituted in the justice of the peace court, then you are instructed that your verdict should be for the defendant in this case.

"Excepted to by defendants and exception allowed."

A verdict was returned by ten jurors, finding for the plaintiff and fixing the amount of the actual damages at $150 and punitive at $600. This was followed by a journal entry and a motion for new trial and its overruling, and case-made being brought here.

Plaintiffs in error have prepared a brief, setting out the pleadings and some portions of the evidence and the procedure at the trial and the instructions offered and refused and excepted to, and instructions given and excepted to, and assign as error the overruling of the motion for new trial, and the admission of incompetent, irrelevant, and immaterial and prejudicial testimony, and the refusal of similar testimony, and the remarks that the court made to the jury, claiming they were prejudicial, and also the remarks of the counsel for the plaintiff in error, the overruling of the demurrer to the evidence, and the giving of instructions Nos. 3, 4, 5, 6, 7 and 9, and also the verdict is contrary to law and the evidence, and the discussion is had under six propositions. The brief on the other side controverts the proposition of Golden not being liable for the prosecution, and cites several cases on the law of master and servant.

There are certain well-defined principles connected with the law of malicious prosecution. If a suit for malicious prosecution would be filed for every failure to convict, or "stick" as the deputy sheriff described it, our courts would be so full of malicious prosecution cases that it would take about all the time to attend to such. We think that the principles of malicious prosecution are well defined by Newell in his work, and that it is well at times to go back to a text-writer to ascertain the principles upon which the law is based. Cases can be multiplied and quoted from until an opinion would become a digest.

It is for the interest of society that infractions of the criminal law be brought to the attention of magistrates for investigation. There are so many vicissitudes connected with the trial of criminal lawsuits that if every time there was a failure of a criminal prosecution, those who had given evidence to the authorities, or who had urged the prosecution, would have to answer for having done so, in a suit, very little assistance would be afforded officers in punishing crime.

At page 252 of Newell on "Malicious Prosecution," the author says:

"Reasonable or probable cause is defined to be such a state of facts in the mind of the prosecutor as would lead a person of

ordinary caution and prudence to believe, on entertain an honest and strong suspicion, that the person is guilty. It does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution"

—and further says:

"In order to maintain the action for malicious prosecution, it is very clear that the plaintiff must aver and prove that the suit complained of was commenced and prosecuted without reasonable or probable cause, and that it was malicious. The groundlessness of the suit may, in many instances, be so obvious and palpable that the existence of malice may be inferred from it. The question of probable cause applies to the nature of the suit: and the point of inquiry is, whether the defendant had probable cause to maintain the particular suit upon the existing facts known to him."

In paragraph 3, on page 265, the author says:

"The want of probable cause is essential to every suit 'for a malicious prosecution. Both that and malice must concur. Malice, it is admitted, may be inferred by the jury from a want of probable cause, but the want of probable cause cannot be inferred from any degree of express malice."

Paragraphs 5 and 6 are as follows:

"5. The right to judge from appearances as to the existence of reasonable or probable cause.—A party about to commence legal proceedings, either civil or criminal, has the right, as affecting the existence of reasonable or probable cause, to judge for himself from appearances; and if from such appearances, though they may have been deceiving, there was a reasonable ground of suspicion supported by circumstances, apparent or real, sufficiently strong in themselves to warrant a cautious man, acting in good faith, in the belief of the existence of reasonable or probable cause, and to create in his mind a reasonable ground of suspicion, it is sufficient in law even if there was in fact no reasonable cause for his action."

"6. Good faith on the part of the prosecutor a defense. Our experience teaches us there are few questions of law more difficult of apprehension by a jury than those which govern trials for malicious prosecution. It seems difficult for them to appreciate, if the plaintiff was really innocent of the charge for which he was prosecuted, that he still ought not to recover. They do not readily comprehend why an innocent man may be prosecuted for a supposed crime or offense. and yet have no recourse against the prosecutor who caused his arrest and imprisonment; and yet the preservation of the peace and the good order of society requires that every innocent man

may be compelled to submit to great inconveniences and hardships, rather than that citizens should be deterred from instituting prosecutions where there is reasonable or probable grounds to believe in the existence of guilt. Good faith on the part of the prosecution is always an important. if not a vital, element of inquiry, and is always a sufficient justification. except where an unreasonable credulity is manifested, inducing the prosecutor to draw conclusions of guilt, when it would have been wanting in the perception of a person of ordinary prudence and judgment."

In paragraph 17, the author says:

"The burden of establishing by competent evidence the want of reasonable or probable cause falls upon the plaintiff. Though a negative proposition, it generally requires but little evidence to establish it. It is the essential ground of an action for malicious prosecution. Malice may be inferred from the want of probable cause, but the want of probable cause cannot be inferred from anything but positive and express proof. The burden of proof is upon the person asserting it to show affirmatively, by circumstances or otherwise, as he may be able, that there was no reasonable or probable cause or grounds for commencing the proceedings in question.

"The rule as held by other American courts seems to be that an acquittal or discharge by the examining magistrate or grand jury is competent. but is not sufficient evidence to show the want of reasonable or probable cause."

Paragraph 20, page 293, is as follows:

"To recover in cases for malicious prosecution of criminal complaints there must be malice on the part of the person starting the prosecution, and a want of probable cause for believing the accused guilty. A want of probable cause is not shown by the acquittal of the accused. If such were the rule, but few, if any, would dare make an effort to enforce the criminal laws of a state. To do so would involve the prosecuting witness. wherever the prosecution failed, in vexatious litigation and loss, and none could be expected to incur such hazards. Prosecuting witnesses must be protected where they act in good faith on facts and circumstances which are such as induce a belief of guilt in the mind of a reasonable person. This has always been the rule of law. The issue for the jury or the court to try is not the guilt of the plaintiff. If the defendant act in good faith on evidence, whether true or false, which is sufficient to create a reasonable belief that the accused is guilty of the offense, he is protected."

As applied to the facts in this case, if the testimony of plaintiff's witness, the deputy sheriff, is true, and that adduced on behalf of the defendant as to the information he

had, when he took the part that he did take in the prosecution, is true, under the principles stated he could not be held for malicious prosecution. The fact of the lien on the goods and the fact of the disposition of the goods on which the lien existed, and of the indifference of the plaintiff to meeting his obligations, stand out in this case from the admissions of plaintiff as detailed by his witness. In one breath the wife was his agent to store the goods, and in the same week she sold and disposed of them, but was only his agent to store, according to the court's ruling. With the facts before the defendant, as detailed by the witnesses, in taking part in the prosecution, he did what any ordinary, prudent, cautious man would have done, and the fact of its failure by reason of the dismissal by the prosecuting attorney without his knowledge or consent, had in his absence before the time set for the trial, is not sufficient in our judgment to justify his being held for actual damage to the defendant, if any damage he sustained, and $600 punitive damages awarded by the jury. The information of Barker's was fully disclosed, apparently, to the prosecuting attorney and the deputy sheriff who verified the complaint and the magistrate who issued the warrant. The deposition of the deputy sheriff was taken by the plaintiff below and used by him with full knowledge of what the deposition contained. His testimony shows that he swore out the warrants and verified the complaint, and that full disclosure was made to the prosecuting attorney and the prosecuting attorney directed the filing of the complaint and the issuing of the warrant though the attorneys did not so remember it. Newell, in the work referred to, at page 21, sections 13 and 14, says:

"13. Actions for malicious prosecutions are regarded by law with jealousy. Lord Holt said more than 200 years ago that they 'ought not to be favored but managed with great caution.' Their tendency is to discourage prosecution for crime, as they expose the prosecutors to civil suits, and the love of justice may not always be strong enough to induce individuals to commence prosecutions, when, if they fail, they may be subjected to the expense of litigation, if they be not mulcted in damages. Anciently it was doubted whether such action would lie unless in a case of conspiracy. But it seems the better opinion always was in favor of sustaining them either with or without conspiracy."

"14. The action not favored in law.— In an action for a malicious prosecution against one in the name of the state. the averment on the part of the plaintiff that the complaint was made without reasonable cause lies at the foundation of the suit; and although it is in form a negative proposition, it is incumbent on the plaintiff to establish it by satisfactory proof. Suits by which the complainant in a criminal prosecution is made liable to an action for damages, at the suit of the person complained of, are not to be favored in law, as they have a tendency to deter men who know of breaches of the law from prosecuting offender. thereby endangering the order and peace of the community."

The Supreme Court of the United States and our own court have spoken about the same way. In Wheeler v. Nesbitt, 24 How. 544, 16 L. Ed. 765, it is stated that want of probable cause must be proved by affirmative evidence, and that the inference of malice and want of probable cause is rebuttable. As stated in the headnotes, the doctrine of that court is in the case of Wheeler v. Nesbitt, cited above, as follows:

"To support an action for a malicious criminal prosecution the plaintiff must prove, in the first place, the fact of prosecution, and that the defendant was himself the prosecutor, or that he instigated its commencement, and that it finally terminated in his acquittal.

"He must also prove that the charge preferred against him was unfounded, and that it was made without reasonable or probable cause, and that the defendant, in making or instigating it, was actuated by malice. * * *

"The burden of proof in the first instance is upon the plaintiff to make out his case, and if he fails to do so in any one of these particulars, the defendant has no occasion to offer any evidence in his defense. * * *

"Malice alone, however, is not sufficient to sustain the action ; because a person actuated by the plainest malice may, nevertheless, prefer a well-founded accusation, and have a justifiable reason for the prosecution of the charge.

"Want of reasonable and probable cause is as much an element in the action * * * as the evil motive * * * and though the averment is a negative one * * * it * * * must be proved by the plaintiff by some affirmative evidence, unless the defendant dispenses with such proof by pleading singly the truth of the several facts involved in the charge."

These general principles have been followed by this court in declaring the essentials to maintain a malicious prosecution. The case of Sawyer v. Shick, 30 Okla. 353, 120 P. 581, enumerates the essentials as being six in number, and the fourth requisite is the absence of probable cause for the proceeding, and the fifth is the presence of malice. As applied to the present case, it will be observed that the court below, during the progress of the evidence, practically held that the good faith of the defendant in the

present suit would scarcely avail anything, in view of the fact that prosecution was instituted without a cost bond being put up. We do not think that the fact of a bond not being put up, in order to maintain the prosecution, would have any bearing in the present case.

The sections of the statute on the subject of making a bond for the prosecution are for the guidance of the examining magistrate, and, in our view of the matter, neither section 2491, C. O. S. 1921, which applies in a felony case, nor section 2993, C. O. S. 1921, which applies to misdemeanor cases, requiring the consent of the county attorney to prosecution of misdemeanor cases without a cost bond, would have such bearing on a malicious prosecution case in a felony case as to justify the court in charging that without the cost bond the proceeding were a nullity, and therefore the prosecutor would become liable, as the jury was practically told in these instructions.

The complaint in this case charged the disposing of property under a conditional sale contract, but the examining magistrate in issuing the warrant referred to it as disposing of property under a mortgage. Under the doctrine laid down by Cobbey on "Chattel Mortgages," section 95, following a Texas case and a Kentucky case, the contract here involved has the elements of a chattel mortgage and could well be classed as such, just as the justice did in this case. The danger of a person who has given information of a crime and is the prosecuting witness being held liable by jurors on mistaken ideas, with the elements of malicious prosecution thoroughly defined, referred to in the authorities cited, becomes much greater under a suit tried in the manner this was, the judge interrogating and ruling that what went to the good faith of the defendant was not admissible testimony, followed by a charge as here given.

No definition was given to the jury of what would be probable cause in a case of this kind, or the lack of it, and neither is there any definition given of what is meant by the prosecution being malicious, but in the third instruction, instead of telling the jury that the two things would have to exist, and that the jury might infer malice from an entire lack of probable cause, the court told the jury that malice was presumed by reason of prosecution without probable cause, as distinguished from being a thing to be found by the jury. In the fourth instruction, instead of using the words "probable cause," the court used the words "proper cause," an element that if here introduced would change the ordinary rules that have been applied to prosecutions of this kind.

The fifth instruction as to a prosecution without a cost bond appears to be absolutely inapplicable, and probably under its influence the jury found the verdict that it did. We find no warrant in the law for such instruction. Neither do we find any warrant in the law for the idea that a prosecution carried on after the county attorney had refused to institute it, would as a matter of law be wrongful. The testimony of the prosecuting attorney in this case is not as convincing and clear upon the point as it might be, but the testimony of the deputy sheriff is positive that the prosecuting attorney directed the issuance of the warrant.

In the present case, the holder of the conditional sale contract was entitled to the protection of the law, as much so as the holder of a formal chattel mortgage, and the justice of the peace, in issuing the warrant, construed the instrument as being a chattel mortgage, and we do not think that under those circumstances the plaintiff in error, who had no actual knowledge of the contents of the warrant, could be held in damages for such a mistake, if a mistake it was.

So far as exemplary damages are concerned, we think the instruction on the subject of allowing exemplary damages followed neither the statute nor the principles laid down in ordinary works on the subject. Our statute on the subject of the measure of damages is section 5975, C. O. S. 1921, which is as follows:

"5975. Jury may give exemplary damages, when. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

The rule is stated in the case of Western Union Telegraph Co. v. Reeves, 34 Okla. 471, 126 P. 216, as follows:

"As a general rule it may be said that exemplary, punitive, or vindictive damages will not be awarded, unless there is proof going to show a wrongful purpose or reckless indifference to consequences, oppression, insult, rudeness, caprice, willfulness, or other causes of aggravation in the act or omission causing the injury, or because the injury was inflicted maliciously, wantonly, or under circumstances of contumely or indignity, or because the circumstances showed a reckless indifference to duty."

The rule in a malicious prosecution case

is stated in Jones Leather Co. v. Woody, 67 Okla. 184, 169 P. 878, as follows:

"Exemplary damages, such as were sought in this action, are imposed by the law on the theory of punishment of the offender for the general benefit of society, and as a restraint to the transgressor, and are allowed only in cases where malice, fraud, oppression, or gross negligence enter into the cause of action. Rhyne v. Turley, 37 Okla. 159, 131 P. 695. The court, in the opinion in the case last cited, after quoting section 2851, Rev. Laws 1910, authorizing exemplary damages where the defendant has been guilty of 'oppression, fraud, or malice, actual or presumed,' says:

" 'This statute is substantially the common law. They have no relation to the question of compensation for loss sustained, but are permitted on the theory of punishment to the offender for the benefit of the community, as a restraint to the transgressor. Such damages are allowed only in cases where malice, fraud, oppression, or gross negligence enter into the cause of action.' Citing a long list of cases.

"In Lindsey v. Couch, 22 Okla. 4, 98 P. 973, 18 Ann. Cas. 60, the court said:

" 'In order to maintain this action it was incumbent on the plaintiff to prove want of probable cause; that is, that the prosecution of which he complains was not based upon such facts and circumstances, known to defendant at the time sufficient in themselves to lead him, as a reasonable and cautious man, to believe the plaintiff probably guilty of the crime charged, but was actuated by malice or some improper or sinister motive. Stewart v. Sonneborn, 98 U. S. 187, 24 L. Ed. 116.' "

We do not believe in this case that the plaintiff in error has had a fair and impartial trial, and we think the court erred in giving instructions Nos. 3, 4, 5, 6, 7, and 9 complained of, and the case is accordingly reversed at the cost of the defendant in error and remanded to the court below, with directions to set aside the verdict and grant a new trial.

RILEY, HEFNER, SWINDALL, ANDREWS, and McNEILL, J., concur. LESTER, C. J., CLARK, V. C. J., and CULLISON, J., absent.

Note.—See under (1), annotation in 4 L. R. A. 259; L. R. A. 1918A, 872; L. R. A. 1918F, 1130; 18 R. C. L. 33; R. C. L. Perm. Supp. p. 4405; R. C. L. Pocket Part, title Malicious Prosecution, § 19.